In the Interest of C.H., Minor Child,

D.H., Father, Appellant.

No. 01–0953.

Supreme Court of Iowa.

Oct. 9, 2002.

David M. Pillers of Pillers Law Offices, P.C., Clinton, for appellant.

Thomas J. Miller, Attorney General, and Gordon E. Allen, Deputy Attorney General, for appellee State.

Bert Watson, Clinton, guardian ad litem for minor child.

STREIT, Justice.

The father of a fourteen-year-old girl appeals from a juvenile court decree terminating his parental rights. We transferred the case to the Iowa Court of Appeals, which reversed the juvenile court's decree as to the father's termination, but affirmed the mother's termination of parental rights. On further review, we now vacate in part and affirm in part the court of appeals' decision and affirm the decree of the juvenile court.

## I. Background and Facts

This case comes to us as an appeal of a juvenile court order terminating the parental rights to three children. Douglas is married to Sandra. Sandra has two daughters from a previous marriage, Diana and Ashley. Douglas has one daughter, Cecilia, from a previous relationship.

All three children lived with Douglas and Sandra.

This family first had contact with governmental services in October 1994. When Douglas and Sandra left to work in a carnival, they left the children in the care of a babysitter. Approximately ten days after Douglas and Sandra left, the caregiver turned the children over to police and charges of abandonment were filed with Social Rehabilitation Services in Topeka, Kansas. Diana and Ashley were placed in foster care in Kansas. The children were returned to the custody of Sandra and Douglas in 1996. In May 1997, DHS investigated a complaint of physical abuse against Douglas. Douglas had split Cecelia's lip open during a disagreement. After temporary foster placement, the children were returned to the care of Douglas and Sandra.

In 1999, the children again were removed from Douglas' and Sandra's care after Diana made allegations of sexual abuse against Douglas. The juvenile court adjudicated all three children in need of assistance in accordance with Iowa Code sections 232.2(6)(b) and (d) (1999). The children were placed in foster care.

In adjudicating the children in need of assistance, the court made extensive and detailed findings of fact. The court found Douglas sexually abused Diana when she was eleven years old. Douglas touched her genitals, anus, and breasts. On one occasion, Diana reported Douglas touched her chest "and where she goes pee and poop." On another occasion, Douglas took Diana out of the shower and touched her genitals with his penis. Diana's sisters knocked on the door, but Douglas told them to go away. Douglas only stopped his conduct with Diana when he heard Sandra return home. Diana told her mother about this particular incident, but Sandra denies that it happened.

The court further found while in foster care, Diana behaved sexually toward her foster father and a twelve-year-old friend. Diana and Cecilia initially were placed in the same foster home, but they were later separated because Diana became physically aggressive toward Cecilia. Cecilia, too, exhibited signs consistent with sexual abuse occurring in the home. She would inappropriately touch, kiss, and rub strangers. Cecilia also played with the family dog's penis.

On one occasion, Cecilia became excessively agitated and began screaming. She was afraid to go to sleep. Cecilia told her foster mother she was afraid her dad would come and get her. Cecilia also said her father would kill her and anyone she told. Cecilia at times refused to take a bath and she would eat until she vomited. The court found Cecilia had delayed social and living skills based upon findings made by a therapist with Families of Northeast Iowa. The court stated Cecilia is self-injurious; she hits herself and pulls her hair out. She does not understand sexual boundaries. When she first met her therapist, Cecilia stated her name and immediately volunteered that her dog licks her private parts when she is naked. Cecilia also reported Diana touched her private parts.

On February 8, 2000, the court adopted the case permanency plan and ordered it implemented by DHS. Both Douglas and Sandra stipulated to the permanency plan. Douglas and Sandra were required to participate in services designed to facilitate reunification of the family.

During the two years the children remained in foster care, Douglas continued to deny sexually abusing his stepdaughter. He began therapy but quickly discontinued services because he refused to admit he sexually abused his stepdaughter. Doug-

las failed to attend substance abuse treatment even though it was recommended by New Directions' substance abuse evaluation. Though Douglas said he was sober, he was convicted of his third offense for operating while intoxicated shortly before the trial on the State's petition to terminate parental rights. Douglas has failed to maintain contact with his daughter.[1]

Nine months after the court adopted the case permanency plan, the juvenile court terminated Douglas' parental rights as to Cecilia. *See* Iowa Code §§ 232.116(1)(c), (e) (1999).[2] The juvenile court found clear and convincing evidence the incidents of sexual abuse reported by Diana occurred. The court also made findings similar to those cited in the order adjudicating the children in need of assistance. Specifically, the court found Cecilia had poor social and hygiene skills. She acted sexually toward others and invades others' space. Cecilia's "poor social, daily living skills, and significant developmental gaps appear to have been the result of little interaction, lack of stimulation, teaching, and exposure by her biological family." The court stated termination was not a sanction for Douglas' exercise of his constitutional right against self-incrimination but was a result of his "failure to recognize and rectify parental deficiencies."

Douglas appealed the termination of his parental rights to Cecilia and the Iowa Court of Appeals reversed the juvenile court.[3] The court of appeals found the State did not satisfy its burden to make reasonable efforts toward reunification because it did not afford Douglas "the option of continuing individual therapy without acknowledging his guilt." The court concluded Douglas' "parental rights were terminated solely because he refused to admit to sexually abusing Diana," and it held "[t]his ground for termination violated Douglas' Fifth Amendment privilege against self-incrimination." The court remanded the case for further proceedings.

The guardian ad litem and the State now seek further review. They contend the court of appeals erred in: (1) allowing the father to wait until the termination hearing to raise a Fifth Amendment challenge to the adequacy of the services provided to him, and (2) finding the father's parental rights were terminated solely on the basis of his failure to acknowledge that he sexually abused his stepdaughter.

The father resists claiming he did not wait until the termination hearing to challenge the adequacy of services. Douglas asserts he repeatedly expressed his dissatisfaction with the services to his social worker. He also contends the court of

---

1. The case permanency plan provided Douglas with visitation rights. Visitation was to occur according to the visit plan indicated in each case permanency plan.

2. Iowa Code section 232.116(1)(c) provides, in part: (1) the court previously adjudicated the child to be a child in need of assistance after finding another child who is a member of the family was sexually abused and (2) after the child in need of assistance adjudication, the parents were offered services to correct the problems leading up to the adjudication.

   Iowa Code section 232.116(1)(e) provides, in part: (1) the child is four years of age or

older; (2) the child has been adjudicated a child in need of assistance; (3) the child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months; and (4) there is clear and convincing evidence the child cannot be returned to the custody of the child's parents.

3. Sandra did not seek further review of the court of appeals decision affirming the juvenile court's termination of her parental rights. We conclude the court of appeals adequately addressed and correctly decided the issues regarding Sandra's termination Accordingly, we do not address this issue.

appeals was correct in finding his parental rights were terminated solely on the basis of his refusal to acknowledge the sexual abuse.

## II. Scope of Review

■ We review termination of parental rights de novo. *In re S.N.*, 500 N.W.2d 32, 34 (Iowa 1993) (citation omitted).

## III. The Merits

On appeal we consider two issues. First, we must determine whether the father could wait until the termination hearing to raise a Fifth Amendment challenge to the adequacy of the services provided to him. We also consider whether the juvenile court erred in terminating the father's parental rights.

### A. Challenge to the Adequacy of Services

■ Douglas has not completed sex offender treatment or substance abuse treatment as recommended. He claims the State did not offer him adequate services to allow him to comply with the case permanency plan and ultimately reunify his family. Specifically, Douglas argues he complained several times to his social worker regarding the adequacy of services provided to him. He, however, made no effort to inform the juvenile court of his complaints.

■ The State must make reasonable efforts to provide services to a parent before termination proceedings may be instituted. Iowa Code § 232.102(7), (10)(a); *In re C.B.*, 611 N.W.2d 489, 492–93 (Iowa 2000). Reasonable efforts are aimed at both preventing and eliminating the need for removal. Iowa Code § 232.102(10)(a);

*In re C.B.*, 611 N.W.2d at 493. "This is both a required element of each state's Title IV–E state plan and a condition of federal funding for individual foster care placements." *In re H.L.B.R.*, 567 N.W.2d 675, 679 (Iowa Ct.App.1997). However, what constitutes reasonable services varies based upon the requirements of each individual case. *Id.* Generally, in making reasonable efforts to provide services, the State's focus is on services to improve parenting. *In re C.B.*, 611 N.W.2d at 493 (citing *In re T.A.L.*, 505 N.W.2d 480, 485 (Iowa 1993)). The concept of reasonable efforts broadly includes "a visitation agreement designed to facilitate reunification while protecting the child from the harm responsible for the removal." *In re M.B.*, 553 N.W.2d 343, 345 (Iowa Ct.App.1996).

It is appropriate in some cases for the parent to request additional services from DHS. It is also appropriate for DHS to respond to such requests if they are within its duty to use reasonable efforts to satisfy the case permanency plan and the goal of reunification. However, in making reasonable efforts to provide services, the State need not search for unavailable services. This is especially so when a parent, as in the present case, presents the awesome challenge of getting treatment for a deficit the parent claims he does not have. A dialogue between the parent and DHS may help the parties comply with the case permanency plan. If, however, a parent is not satisfied with DHS' response to a request for other services, the parent must come to the court and present this challenge. *See* Iowa Code § 232.99(3)[4]

Douglas asserts he told his social worker, Karen Claussen, he wanted other treatment that would not force him to admit to the sexual abuse. Karen Claussen's re-

4. Where a parent fails to identify a deficiency in services or to request additional services, he or she may be precluded from later chal-

lenging the sufficiency of the services. Iowa Code § 232.99(3).

ports do not reveal such a request. The court approved a case permanency plan for Cecilia and her family, which identified the problems within the family unit and provided a variety of services to Douglas. Douglas failed to comply with the case permanency plan. DHS offered him classes to facilitate parent skills development and treatment for substance abuse issues. Since 1999 when Cecilia went into foster care, DHS has offered Douglas treatment on at least two occasions. Douglas refused to accept such treatment. Instead, he requested alternate services when there was no evidence to suggest the services were available. After two failed attempts at treatment and requests for nonexistent services, it is clear the State made reasonable efforts to provide services to Douglas before the court terminated his parental rights.

Even if Douglas asked for alternative treatment, he did not make his request in an appropriate proceeding or at the appropriate time. In general, if a parent fails to request other services at the proper time, the parent waives the issue and may not later challenge it at the termination proceeding. *See In re S.R.*, 600 N.W.2d 63, 65 (Iowa Ct.App.1999); *In re L.M.W.*, 518 N.W.2d 804, 807 (Iowa Ct.App.1994) (parent must demand services if he or she feels they are inadequate prior to termination); Iowa Code § 232.99(3). If a parent has a complaint regarding services, the parent must make such challenge at the removal, when the case permanency plan is entered, or at later review hearings. *Id.* Moreover, voicing complaints regarding the adequacy of services to a social worker is not sufficient. A parent must inform the juvenile court of such challenge.

Douglas did not inform the court at the time the children were removed from the home that he disliked the services available to him. He did not notify the court of his complaint later when the court adopted the case permanency plan. He also failed to notify the court at a later review hearing. Rather, Douglas waited until the termination hearing to make this challenge before the court. We conclude Douglas may not now challenge the sufficiency of services provided to him. Even if Douglas' attorney had filed a motion with the juvenile court requesting alternative services in a timely manner, Douglas' argument would still fail as there was ample evidence to support the termination apart from his failure to get treatment for his problem.

## B. Basis For Termination of Parental Rights

◼ The court of appeals found the only ground upon which the juvenile court based its decision to terminate parental rights was the father's refusal to admit he sexually abused his stepdaughter. The court found this was impermissible as the father has a constitutional right against self-incrimination. We disagree with the court of appeals' conclusion that the juvenile court terminated Douglas' parental rights solely because of his failure to admit guilt.

The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The privilege applies equally to allow a person " 'not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings.' " *Minnesota v. Murphy*, 465 U.S. 420, 426, 104 S.Ct. 1136, 1141, 79 L.Ed.2d 409, 418 (1984) (quoting *Lefkowitz v. Turley*, 414 U.S. 70, 77, 94 S.Ct. 316, 322, 38 L.Ed.2d 274, 281 (1973)). "When the State 'compels testimony by threatening to inflict potent sanctions unless the constitu-

tional privilege is surrendered, that testimony is obtained in violation of the Fifth Amendment.'" *In re E.H. III,* 578 N.W.2d 243, 249 (Iowa 1998) (quoting *Lefkowitz v. Cunningham,* 431 U.S. 801, 805, 97 S.Ct. 2132, 2135, 53 L.Ed.2d 1, 7 (1977)). The privilege against self-incrimination applies also within the context of court-ordered therapy requiring an admission of criminal conduct. *In re E.H. III,* 578 N.W.2d at 249 (citations omitted).

In this case, Douglas' would-be statements that he abused his stepdaughter were not compelled by the State to prevent the potential sanction of losing his daughter. The court may not compel Douglas to admit his guilt in order to be eligible to regain custody of his daughter. The court may, however, require Douglas to comply with the case permanency plan which includes treatment. Failure to do so may result in termination of his parental rights.

The case permanency plan required Douglas to accomplish several things. Douglas had to undergo a substance abuse evaluation and follow the recommendations of the evaluation. In connection with this, Douglas was specifically ordered not to use alcohol. The plan required Douglas to complete sexual offender treatment and learn to control inappropriate sexual behavior. Finally, because the parents have difficulty setting rules, controlling Cecilia's behavior, and appropriately disciplining and maintaining reasonable boundaries, Douglas had to participate in family-centered services and attend all sessions. The case permanency plan also required Douglas to maintain both a stable residence and employment. Overall, Douglas was required to provide for Cecilia's emotional, physical, and educational needs. Douglas failed every requirement of the case permanency plan.

In order for Douglas to work toward family reunification it was crucial that he undergo substance abuse treatment. All three girls stated Douglas drinks heavily. Both Cecilia and Diana stated that when the abuse occurred in the house, Douglas had frequently been drinking. Douglas underwent a substance abuse evaluation that ultimately recommended he participate in the extended outpatient treatment program. Despite the recommendation, Douglas did not comply because he said he was no longer drinking and did not need the treatment. Douglas' protestations of sobriety were unfounded as proven by his third conviction for operating while intoxicated. Douglas' social worker also received periodic reports that Douglas was still drinking, in addition to his conviction.

The case permanency plan also provided Douglas had to participate in parenting skills services. As to rectifying parental deficiencies, Douglas attended a few sessions designed to improve his parenting skills but was uncooperative and did not complete assignments. In January 2001, one month prior to the termination, he completely stopped attending these services. It cannot be said Douglas participated in any meaningful way in learning better parenting skills.

Douglas was required to maintain a stable residence and employment. During the two years the girls were in foster care, Douglas did not comply with these requirements. Douglas and Sandra sold their home and purchased a mobile home in which they moved around from one camping sight to the next for approximately one year. During the same time, Douglas did not maintain a stable job. In general, Douglas' social worker stated Douglas has shown little interest in visitation or reunification with Cecilia.

Douglas was unsuccessful in sexual offender treatment. The case permanency

plan only required Douglas to complete treatment. Under the case plan, successful completion of treatment did not include a requirement of admission of guilt. Douglas first sought treatment with Dan Fullerton, but quickly ceased his visits because he was unwilling to admit he abused Diana. Dr. David McEchron, a clinical psychologist, also attempted to treat Douglas. The fact Douglas failed to address the sexual abuse issues was not the only reason he failed his second attempt at treatment. Dr. McEchron was concerned with his findings of Douglas' depression and lack of self-esteem. Douglas denied any need for psychological treatment whether it would be for depression, self-esteem issues, or sexual abuse problems. Dr. McEchron did not terminate treatment solely because of Douglas' unwillingness to admit responsibility for the abuse. Though Douglas stated he is depressed, psychological tests revealed the extent of Douglas' depression to be much worse than he admitted. Dr. McEchron believed Douglas needed treatment for more than just the sexual abuse issues. Because of Douglas' unwillingness to participate in any meaningful form of treatment, Dr. McEchron terminated treatment.

The State may not penalize Douglas for noncompliance with a court order impinging on his right against self-incrimination. *See In re J.W.*, 415 N.W.2d 879, 883 (Minn. 1987) (citing *Turley*, 414 U.S. at 77, 94 S.Ct. at 322, 38 L.Ed.2d at 281 and *Cunningham*, 431 U.S. at 804–05, 97 S.Ct. at 2135, 53 L.Ed.2d at 6). But this is as far as the Fifth Amendment privilege extends. The State may require parents to otherwise undergo treatment, but it may not specifically require an admission of guilt as part of the treatment. Contrary to Douglas' assertions, a person's exercise of a constitutional right *may* indeed have consequences. One such consequence may be

a person's failure to obtain treatment for his or her problems.

Here, there is no evidence the State required Douglas to complete any particular sexual offender treatment program. There is also no evidence that the State disapproved of Douglas' participation in a treatment program that would not require an admission of guilt. In fact, there was no evidence showing there was alternative treatment available to him that would satisfy his concerns. The permanency plan merely required treatment. Douglas' failure to complete treatment because of one reason—his exercising his Fifth Amendment rights—does not lessen his failure. Under such facts, we find Douglas failed to prove the State's case permanency plan effectively constituted a requirement that Douglas must incriminate himself. *See, e.g., In re E.H. III*, 578 N.W.2d at 250; *State ex rel. Juvenile Dep't v. Black*, 101 Or.App. 626, 792 P.2d 1225, 1228 (1990).

We note that sexual offender treatment where the offender refuses to take responsibility for the abuse may constitute ineffective therapy. *In re H.R.K.*, 433 N.W.2d 46, 50 (Iowa Ct.App.1988) ("requirement that the parents acknowledge and recognize the abuse before any meaningful change can occur is essential in meeting the child's needs"). A parent's failure to address his or her role in the abuse may hurt the parents' chances of regaining custody and care of their children. However, "these consequences lie outside the protective ambit of the Fifth Amendment." *In re J.W.*, 415 N.W.2d at 883. We acknowledge the fact that Douglas is faced with a dilemma, but we find it is not a dilemma that triggers constitutional protection. *Id.* at 884.

Douglas was well aware of what was required of him under the case permanency plan. The State made continuous attempts to see that Douglas was able to

satisfy the plan's requirements. DHS provided Douglas with treatment and other services to overcome his problems. The department gave him generous time to develop needed parenting skills and comply with all of the requirements of the case permanency plan. Yet he has failed to show little, if any, improvement. Given Douglas' past performance, we are not convinced additional time or alternative services will change his conduct. Douglas' resolute denial of these allegations neither lessens the juvenile court's finding nor shakes the court's goal to do what is best for the child.

The best interests of Cecilia are our paramount concern. *In re L.L.,* 459 N.W.2d 489, 493 (Iowa 1990). Douglas' failure to comply with the requirements of the case permanency plan shows his "lack of commitment to [Cecilia], and [his] persistence in putting [his] own needs before those of [his] child." *In re J.L.W.,* 570 N.W.2d 778, 780 (Iowa Ct.App.1997). As a result of Douglas' failure to complete any form of treatment, we cannot conclude Douglas has fixed his problems and is now fit as a parent. *See In re Guardianship of D.J.M.,* 325 N.J.Super. 150, 737 A.2d 1179, 1184 (1999). Douglas has given us no reason to believe that he is now able to be a parent to Cecilia or that he will not continue his abusive patterns. "The crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems." *In re J.L.W.,* 570 N.W.2d at 781 (quoting *In re D.A.,* 506 N.W.2d 478, 479 (Iowa Ct.App.1993)); *In re L.L.,* 459 N.W.2d at 495. "Children simply cannot wait for responsible parenting." *Id.* (quoting *In re L.L.,* 459 N.W.2d at 495). In looking to her long-range as well as immediate interests, we conclude termination of Douglas' parental rights is in Cecilia's best interests. *See In re J.L.W.,* 570 N.W.2d at 781; *In re L.L.,* 459 N.W.2d at 493.

All of these factors were within the juvenile court's consideration when it determined whether Douglas' parental rights should be terminated. Foremost in the court's deliberations was the fact that the juvenile court found Douglas *did* sexually abuse his stepdaughter and the abuse was ongoing. Douglas never appealed this finding by the juvenile court. Based on the facts in the record, we conclude Douglas' failure to admit guilt was not the reason Cecilia could not or should not be returned to her father. There is substantial competent and credible evidence to support the juvenile court's termination decree.

**DECISION OF COURT OF APPEALS VACATED IN PART AND AFFIRMED IN PART; DECREE OF JUVENILE COURT AFFIRMED.**