# IN THE SUPREME COURT OF IOWA

No. 09–1204

Filed February 26, 2010

**IN THE INTEREST OF A.K.S.,** Minor Child,

**R.S.,** Mother,

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Washington County, Lucy J. Gamon, District Associate Judge.

State seeks further review of court of appeals' decision reversing juvenile court judgment terminating mother's parental rights. **DECISION OF COURT OF APPEALS VACATED. DISTRICT COURT JUDGMENT AFFIRMED.**

Kathryn J. Salazar of Day, Meeker, Lamping, Schlegel & Salazar, Washington, for appellant mother.

Jeffrey L. Powell of Tindal Law Office, P.L.C., Washington, for appellee father.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant Attorney General, and Barbara A. Edmondson, County Attorney, for appellee State.

Katherine E.M. Lujan of Lloyd, McConnell, Davis & Lujan, Washington, for minor child.

**TERNUS, Chief Justice.**

A mother appeals the termination of her parental rights to her then four-year-old daughter. She contends the juvenile court erred in finding (1) reasonable efforts for reunification had been made by the State, (2) clear and convincing evidence supports the child could not safely be returned to her home, and (3) termination was in the child's best interests. The court of appeals found termination was not in the child's best interests. It reversed the termination order and remanded the case to the juvenile court. The State seeks further review. Upon our de novo review, we vacate the court of appeals decision and affirm the judgment of the juvenile court terminating the mother's parental rights.

## I. Background Facts and Proceedings.

A.K.S. was born in December 2004. In 2006, the Department of Human Services (DHS) instituted an investigation when it learned that A.K.S. was living with her father, T.S., a registered sex offender who had served prison time for sexually abusing a daughter from a prior relationship. Shortly after the investigation began, R.S. and T.S. were married. A.K.S. was temporarily placed in foster care for three months until R.S. found permanent housing away from T.S.

In September 2006, A.K.S. was adjudicated a child in need of assistance pursuant to paragraphs (*c*)(2) and (*d*) of Iowa Code section 232.2(6) (2005).[1] Specifically with regards to A.K.S.'s mother, R.S., the juvenile court found that R.S. had failed to provide adequate supervision to A.K.S. by allowing the child's father to have unsupervised contact with her

---

[1]Paragraph (*c*)(2) identifies a child in need of assistance who has been harmed or is imminently likely to be harmed because the child's parent has failed "to exercise a reasonable degree of care in supervising the child." Iowa Code § 232.2(6)(*c*)(2). Paragraph (*d*) identifies a child who has been or is imminently likely to be sexually abused by a member of the child's household. *Id.* § 232.2(6)(*d*).

daughter, knowing that he was an untreated sex offender. The juvenile court found an imminent likelihood that T.S. would sexually abuse A.K.S. if she were allowed to remain in his care. At a subsequent dispositional hearing, the court ordered R.S. to not allow any unsupervised contact between A.K.S. and T.S. R.S. was also ordered to complete a sex offender program to educate her about the dangers of sex offenders. R.S. retained legal custody of A.K.S., with the department to monitor placement. T.S. was allowed supervised visits only.

Over the next year, DHS continued to have extensive contact with the family, providing many services to R.S. including housing assistance, individual therapy, family-centered services, FSRP services, day care for A.K.S., transportation services, and a child development evaluation. A psychological evaluation of R.S. revealed R.S. was mildly mentally retarded, but noted no "acute psychological distress that would impede her ability to parent children."

On March 18, 2008, the court entered an ex parte temporary removal order removing A.K.S. from R.S.'s home based upon allegations that T.S. was having unsupervised visitation with A.K.S. At a contested hearing, the court found R.S did not believe T.S. posed a risk to A.K.S. and had allowed the unauthorized visits. In addition, the court found that R.S. allowed the child a visit in a home where R.S. knew another sex offender was residing. The court also noted that neither parent had completed the court-ordered sex offender program. Based upon these findings, A.K.S. was placed in the custody of DHS for purposes of placement in foster care.

After A.K.S.'s placement in foster care, R.S. cooperated with the services provided by the department in an effort to regain custody of A.K.S. R.S. obtained a divorce from T.S. and a no-contact order against him. She continued to meet weekly with a sex offender therapist and participated in

parenting services, which were combined with supervised visits. A second psychological evaluation was obtained in which the psychologist made recommendations to those attempting to teach R.S. new skills. These recommendations were noted and implemented by R.S.'s providers.

In November 2008, however, the department learned that R.S. was continuing to have contact with T.S. through text messaging, even though she was aware the no-contact order forbade such communications. On April 15, 2009, the State petitioned the juvenile court, pursuant to Iowa Code section 232.111 (2009), for termination of the parental rights of R.S.[2] After a hearing, the juvenile court, on July 30, 2009, terminated R.S.'s parental rights to A.K.S. pursuant to Iowa Code section 232.116(1)(*f*). R.S. filed a timely notice of appeal. The case was transferred to the court of appeals which reversed the juvenile court, concluding it was in the child's best interests to postpone the termination of R.S.'s parental rights for six months to test R.S.'s ability to parent the child independently. Upon our further review, we now reverse the court of appeals and affirm the juvenile court's decision terminating R.S.'s parental rights to A.K.S.

## II. Scope and Standard of Review.

We review a decision to terminate parental rights de novo. *In re P.L.*, ___ N.W.2d ___, ___ (Iowa 2010). We give weight to the factual determinations of the juvenile court, but we are not bound by them. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006). Grounds to terminate parental rights must be proven by clear and convincing evidence. *Id.*

## III. Analytical Framework.

The proper analytical approach to be applied in chapter 232 termination cases was recently reviewed in *In re P.L.* The first step is for the

---

[2]The State separately petitioned to terminate T.S.'s parental rights to A.K.S. That petition was granted, and the decision was affirmed by the court of appeals.

court to determine whether a ground for termination exists under section 232.116(1). *In re P.L.*, ___ N.W.2d at ___. "If a ground exists, the court may terminate a parent's parental rights." *Id.* (citing Iowa Code § 232.116(1)). In determining whether to terminate, " 'the court shall give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child.' " *Id.* (quoting Iowa Code § 232.116(2)). The judge's decision should contain any findings in this regard. *Id.* Lastly, "the court must consider if any of the exceptions contained in section 232.116(3) allow the court not to terminate." *Id.* (citing Iowa Code § 232.116(3)).

**IV. Analysis.**

Iowa Code section 232.116 provides the grounds for parental rights termination under chapter 232. Pursuant to the statute, if the court finds that all of the following exist, it may order the termination of parental rights:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months . . . .
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

Iowa Code § 232.116(1)(*f*).

R.S. does not dispute the first three elements under this section were established. However, she does assert reasonable efforts for reunification, as required in section 232.102, were not provided, and therefore, termination was inappropriate at this time. She also claims there was not clear and convincing evidence that A.K.S. could not be safely returned to her home.

*See id.* §§ 232.102, .116(1)(*f*).   Finally, R.S. contends termination of her parental rights was detrimental to A.K.S.'s best interest.   *See id.* § 232.116(3).  We will discuss each argument in turn.

**A. Reasonable Efforts for Reunification.**   Iowa Code section 232.102(5)(*b*) requires "reasonable efforts shall be made to make it possible for the child to safely return to the family's home."  Such efforts must be undertaken by the State prior to termination of the parent's rights.  *In re C.H.*, 652 N.W.2d 144, 147 (Iowa 2002); *see In re C.D.*, 508 N.W.2d 97, 100 (Iowa Ct. App. 1993).  In determining whether reasonable efforts have been made, the court is required to consider the type, duration, and intensity of services or support offered and the relative risk of the child remaining in the home versus removal.  *See* Iowa Code § 232.102(10)(*a*).

R.S. claims the State failed to make reasonable efforts to support reunification because DHS did not assist her in locating a new sex offender therapist or forward her psychological assessments to the new therapist in a timely manner.  She also asserts DHS failed to adjust its services to take into account her cognitive limitations, did not provide transportation to and from services, did not increase visitation, did not provide parenting skills instruction, and did not aid her in finding programming that would assist her in keeping her child.

The record reveals that, while DHS did not assist R.S. in locating a new sex offender therapist or forward her psychological assessments to the new therapist, R.S. was successful in obtaining a new therapist in January 2009 who was quickly able to determine what educational methods worked best with R.S.  Moreover, the record contains ample evidence that DHS did adjust its services, including parenting skills instruction and programming, to take into account R.S.'s cognitive limitations.  In addition, efforts were made to assist R.S. with transportation whenever possible.  Nevertheless,

after almost three years of extensive services, R.S. had made limited progress in her ability to successfully parent A.K.S. The juvenile court correctly concluded that reasonable efforts were made to reunify R.S. with A.K.S.

**B. Whether A.K.S. Can Safely Be Returned to R.S.'s Care**. Before a parent's parental rights can be terminated pursuant to Iowa Code section 232.116(1)(*f*), there must be clear and convincing evidence that, at the time of the hearing, the child cannot be returned to the custody of the parents. In its petition to terminate parental rights, DHS's main concern revolved around R.S.'s ability to keep A.K.S. safe. *See In re P.L.*, ___ N.W.2d at ___ (noting that in determining whether to terminate a parent's parental rights, the court's primary considerations are the child's safety, the best placement for the furthering of long-term growth and nurturing, and the physical, mental, and emotional condition and needs of the child). DHS concluded that, while R.S. genuinely tried to make improvements and genuinely loves and cares for her child, she remains unable to ensure A.K.S.'s safety, particularly her safety from sex offenders.

In determining that A.K.S. could not be safely returned to R.S., the juvenile court noted the evidence established: (1) that A.K.S.'s father, T.S., was a sex offender who was found to be at "maximum risk" for future sexual assault and/or incestuous behavior; (2) that despite all the years of therapy, R.S., due to her limited cognitive ability and trusting nature, would not be able to recognize potential dangers in A.K.S.'s environment without an extensive support network; and (3) no such support network exists for R.S. now or in the foreseeable future. Based upon these facts and R.S.'s history of maintaining contact with T.S., while denying that she was doing so, the court concluded that, if A.K.S. were returned to R.S.'s care, the risk of sexual abuse would be unacceptably high. Moreover, the court found A.K.S. has shown an ability to bond with her foster family and was clearly adoptable.

*See* Iowa Code § 232.116(2) (requiring the court, in determining whether to terminate parental rights, to consider "the best placement for furthering the long-term nurturing and growth of the child" and the mental and emotional needs of the child). Upon our de novo review, we conclude the juvenile court correctly concluded A.K.S. could not be safely returned to R.S.'s care, and it was in the child's best interest to terminate R.S.'s parental rights.

**C. Whether Termination of R.S.'s Rights Would Be Detrimental to A.K.S.** "Even though the court may determine that termination is appropriate under section 232.116(2), the court need not terminate a parent's parental rights if any of the circumstances contained in section 232.116(3) exist." *In re P.L.*, ___ N.W.2d at ___. R.S. contends that it was not in A.K.S.'s best interest that her parental rights be terminated because there was clear and convincing evidence that termination would be detrimental to A.K.S. due to the closeness of the parent-child relationship. *See* Iowa Code § 232.116(3)(*c*).

The juvenile court was well aware and considerate of the bond between R.S. and A.K.S. Nevertheless, it concluded the risk of sexual abuse outweighed the detrimental effect of termination of R.S.'s parental rights. Upon our de novo review, we conclude the juvenile court correctly concluded the application of an exception to termination under section 232.116(3)(*c*) was not warranted.

**V. Conclusion.**

Upon our de novo review, we concur in the juvenile court's decision to terminate R.S.'s parental rights. Therefore, we vacate the court of appeals' decision and affirm the judgment of the juvenile court terminating the mother's parental rights.

**DECISION OF COURT OF APPEALS VACATED. DISTRICT COURT JUDGMENT AFFIRMED.**

This opinion shall not be published.