**IN THE COURT OF APPEALS OF IOWA**

No. 20-1545
Filed February 3, 2021

**IN THE INTEREST OF C.W.,**
**Minor Child,**

**K.C., Father,**
        Appellant.
_____

        Appeal from the Iowa District Court for Crawford County, Mary L. Timko, Associate Juvenile Judge.

        A father appeals the termination of his parental rights to his child.
**AFFIRMED.**

        George Blazek of Franck, Sextro & Blazek, PLC, Denison, for appellant father.

        Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

        Dean Fankhauser of Fankhauser, Farrens & Rachel PLC, Sioux City, attorney and guardian ad litem for minor child.

        Considered by Bower, C.J., and Doyle and Mullins, JJ.

**DOYLE, Judge.**

A father appeals the juvenile court order terminating his parental rights to his child. He contends the State failed to prove the grounds for termination by clear and convincing evidence. He also contends the State failed to make reasonable efforts to return the child to the home. We review his claims do novo. *See In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018).

The child was born in June 2018 and was in the mother's care until the State removed the child in September 2019. The juvenile court adjudicated the child to be a child in need of assistance (CINA) the next month. Although the father was aware there was a significant chance he was the child's father, he had no involvement in the child's life. The father expressed that he did not want visits with the child until paternity was determined.

The father's paternity was established in December 2019. His first visit with the child occurred in March 2020. A few in-person visits occurred before they were changed to video visits due to the COVID-19 pandemic. In-person visits resumed in June 2020, but the father's participation was inconsistent due to scheduling conflicts. The father's visits became more consistent when they were moved to his home about three weeks before the termination hearing. But the father never obtained substance-abuse and mental-health evaluations as directed by the Iowa Department of Human Services (DHS).

In August 2020, the State filed a petition to terminate the father's parental rights.[1] The court held the termination hearing the next month. The record was

---

[1] The State also petitioned to terminate the mother's parental rights, and the mother consented to termination before the hearing.

reopened for additional evidence before the court entered its termination order in November 2020. Both the DHS and the guardian ad litem recommended terminating the father's parental rights.

The juvenile court terminated the father's parental rights under Iowa Code section 232.116(1)(b), (e), and (h) (2020). We can affirm if the record supports termination under any one of these grounds. *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). The court may terminate parental rights under section 232.116(1)(h) if clear and convincing evidence shows:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

The father argues there is insufficient evidence to show the child would be exposed to adjudicatory harm if returned to his care at the time of the termination. *See* Iowa Code § 232.116(1)(h)(4); *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting the term "at the present time" to mean "at the time of the termination hearing"); *In re M.S.*, 889 N.W.2d 675, 680 (Iowa Ct. App. 2016) (noting a child cannot be returned to the custody of the parent if doing so would expose the child to any harm amounting to a new CINA adjudication).

In the report submitted to the juvenile court by the DHS before the termination hearing, the DHS summarized its concerns regarding the father:

> Although [the father] has recently started showing more effort in knowing [the child], he has also made it clear that his girlfriend and

other child are priority and also stated taking off work for [the child]'s needs is not an option. [The father] has also been resistant to completing orders of the court simply because he doesn't feel that it's a problem for him. Referrals have been made and conversations have been had but he has not completed necessary evaluations and only very recently complied with a drug screen. [The child]'s safety, basic needs and well-being deserves to be priority and his parents are unable to offer him that at this time or in the foreseeable future.

The juvenile court agreed that the child could not be placed in the father's custody without exposing the child to a risk of harm. It observed:

[The father] is just beginning to establish a relationship with [the child]. His girlfriend and [the child]'s half-siblings do not have a relationship with [the child]. The FSRP worker stated that there is not enough room in [the father]'s home for [the child]. There is little evidence to indicate that [the father] can financially support [the child] as well as the rest of his family. There is little evidence that [the father] has appropriate child care for [the child]. Some of the individuals he mentioned as possible caretakers are known to this court and have not yet been approved by the [DHS] to play a caretaker role. [The child] would continue to be a [CINA] as pled if returned to [the father]'s care.

The father complains that the court failed to cite a specific code section under which the child would likely be adjudicated a CINA if placed in his custody. He claims that absence of a CINA adjudication for the child's half-sibling, born in February 2020, shows that he can care for the child at issue without exposing the child to risk of adjudicatory harm. But the ability to care for one child does not equate with an ability to care for two young children.

The facts before us are similar to those described in *In re Z.P.*, 948 N.W.2d 518, 523-25 (Iowa 2020), and *In re A.M.*, 843 N.W.2d 100, 110-12 (Iowa 2014), in which the supreme court found the evidence supported terminating parental rights under section 232.116(1)(h). Those cases involved parents who "were well intentioned" and "displayed none of the characteristic red flags found in so many

of these termination cases." *Z.P.*, 948 N.W.2d at 525 (citing *A.M.*, 843 N.W.2d at 109); *accord A.M.*, 843 N.W.2d at 111 (describing "a difficult case" that "does not present any of the usual precursors to termination of parental rights, such as physical or emotional abuse of the child, substance abuse by one or both parents, domestic abuse, parental criminal conduct, or even overt neglect"). But in both cases, the parents failed to make the necessary progress to provide a safe home for a young child. *Z.P.*, 948 N.W.2d at 525; *A.M.*, 843 N.W.2d at 111 (noting that although there was no dispute that the parents cared deeply for the child and had made progress, they were still unable to care for the child without ongoing DHS involvement). The parents in those cases never progressed beyond semi-supervised visits to a trial period in the home. *Z.P.*, 948 N.W.2d at 520; *A.M.*, 843 N.W.2d at 112. As in *Z.P.*, questions remain about the adequacy of the space in the father's home for the child, the father's ability to meet the child's medical needs, his plans for child care, and his substance use. 948 N.W.2d at 520, 524.

A hallmark of this case is the father's inaction. The father did nothing to confirm his paternity after the child was born. Once the child was adjudicated to be a CINA, the father had no interest in visits until his paternity was established. Even then, three months passed before visits began, and the father's participation was inconsistent until shortly before the termination hearing. The father never attended the child's medical appointments. Nor did he obtain a substance-abuse[2] or mental-health evaluation as the DHS requested. Our supreme court has often

---

[2] The father pled guilty to possession of marijuana in 2018 and admits to a history of drinking to excess. But he claims he has been sober for three years and argues the State failed to produce evidence of recent marijuana or alcohol use. A substance-use evaluation may have been helpful in resolving this point.

stated the importance of the statutory timeframes in making the determination to terminate parental rights. *See In re R.J.*, 436 N.W.2d 630, 636 (Iowa 1989) (noting that once the time period for reunification set by the legislature has expired, "patience on behalf of the parent can quickly translate into intolerable hardship for the children"); *In re A.C.*, 415 N.W.2d 609, 614 (Iowa 1987) ("It is unnecessary to take from the children's future any more than is demanded by statute."). The statutory timeframe under section 232.116(1)(h) is a mere six months. *See* Iowa Code § 232.116(1)(h)(3). One year passed between the child's removal from the home and the termination hearing. As a result of the father's inaction during this time, the child cannot be placed in his care.

The father also challenges the reasonable efforts made by the State to return the child to his care. *See* Iowa Code § 232.102(7) (requiring that the State "make every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interests of the child"). He argues the DHS offered inadequate visitation. But in order to preserve error on a reasonable-efforts challenge, a parent must complain to the juvenile court about the adequacy of the services "at the removal, when the case permanency plan is entered, or at later review hearings." *In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2002). Though the father addressed the issue to the DHS case manager, "voicing complaints regarding the adequacy of services to a social worker is not sufficient." *Id.* Because the father failed to ask the juvenile court for additional services, the issue is not preserved for our review.

**AFFIRMED.**