# IN THE COURT OF APPEALS OF IOWA

No. 21-0733
Filed August 18, 2021


**IN THE INTEREST OF R.R. AND P.A.,**
**Minor Children,**

**R.A., Father,**
    Appellant.
_____


Appeal from the Iowa District Court for Clay County, Andrew Smith, District Associate Judge.


The father appeals the termination of his parental rights to his children. **AFFIRMED.**


Lisa K. Mazurek of Miller Miller Miller P.C., Cherokee, for appellant father.

Thomas J. Miller, Attorney General, and Diane Murphy Smith, Assistant Attorney General, for appellee State.

Shannon Lee Sandy of Sandy Law Firm, P.C., Spirit Lake, attorney and guardian ad litem for minor children.


Considered by Tabor, P.J., Ahlers, J., and Doyle, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**AHLERS, Judge.**

The father appeals the termination of his parental rights to his children, R.R. (born in 2013) and P.A. (born in 2010).[1] He claims the Iowa Department of Human Services (DHS) failed to make reasonable efforts toward reunification. *See* Iowa Code § 232.102(7) (2021) (requiring the DHS to "make every reasonable effort to return the child[ren] to the child[ren]'s home as quickly as possible consistent with the best interests of the child[ren]"). Specifically, he argues the substance-abuse services offered to him were "unreasonable" based on the temporary unavailability of in-person treatment due to the COVID-19 pandemic. He also asserts it was unreasonable for Family Centered Services (FCS) to offer solution-based casework at the same time it was supervising family visits with the children. The juvenile court had this to say about the father's reasonable-efforts claims:

> [B]oth parents were directed to treatment providers, had the opportunity to participate in both inpatient and outpatient treatment, and were reminded repeatedly of the need for consistency in follow-through with those services. Any inability to meet that goal of maintaining sobriety is attributable to the lack of follow-through from the parents and not in any way attributable to the FCS provider or the particular manner in which those services were presented to the parents.
>      . . . .
>      With respect to the specific argument that lack of face-to-face contact negatively impacted the services provided to these parents, that argument is not supported by the evidence. Both parents had the opportunity for face-to-face contact with providers by July or August of 2020. Despite arguments to the contrary, urinalysis was occurring as [the father] had already attempted to cheat at least two tests by that time. Both parents were aware at that time of the recommendation for inpatient treatment. By the beginning of August . . . [the father] had declared he would not attend inpatient treatment despite the recommendation. . . . Both parents continued to use, test

---

[1] The mother's parental rights to the children were also terminated, but she does not appeal.

positive, and attempt to cheat drug testing well after the resumption of in-person services.

The father argues that not enough testing was conducted in this matter. However, the testing which was conducted, combined with [the parents'] attempts to cheat drug testing throughout the course of the case, is sufficient to demonstrate continued use by both parents. It is not clear what benefit would be achieved from additional testing.

The State argues the father failed to preserve error on his reasonable-efforts claims. The father claims error was preserved by contesting termination and raising the reasonable-efforts issue at the termination hearing. We agree with the State.

"The Department has an obligation to make reasonable efforts toward reunification, but a parent has an equal obligation to demand other, different, or additional services prior to a permanency or termination hearing." *In re A.A.G.*, 708 N.W.2d 85, 91 (Iowa Ct. App. 2005). Our supreme court has explained the parent's obligation as follows:

If a parent has a complaint regarding services, the parent must make such challenge at the removal, when the case permanency plan is entered, or at later review hearings. Moreover, voicing complaints regarding the adequacy of services to a social worker is not sufficient. A parent must inform the juvenile court of such challenge.

*In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2002) (internal citations omitted). Nothing in the record shows the father raised any concerns with the substance-abuse services offered before the termination hearing. Similarly, the father's complaint about FCS providing solution-based casework at the same time it supervised visits was not brought to the juvenile court's attention until the termination hearing. Informing the juvenile court of claimed inadequacies of services for the first time at the termination hearing is too late. "[I]f a parent fails to request other services at

the proper time, the parent waives the issue and may not later challenge it at the termination proceeding.'" *Id.*; *accord In re T.S.*, 868 N.W.2d 425, 442 (Iowa Ct. App. 2015). We conclude the father waived the reasonable-efforts issues he raises on appeal by failing to inform the juvenile court of the challenges at removal, when the case permanency plan was entered, at a review hearing, or at any other time before the termination hearing.

The father raises no other challenge to the termination of his parental rights, so we affirm without further consideration.

**AFFIRMED.**