**IN THE COURT OF APPEALS OF IOWA**

No. 22-1015
Filed September 21, 2022

**IN THE INTEREST OF D.R.,**
**Minor Child**

**C.R., Mother,**
　　Appellant.
_____

　　Appeal from the Iowa District Court for Wapello County, William Owens, Associate Juvenile Judge.


　　A mother appeals the termination of her parental rights.  **AFFIRMED.**


　　Cynthia D. Hucks of Box and Box Attorneys, Ottumwa, for appellant mother.

　　Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

　　Kevin S. Maughan, Albia, attorney and guardian ad litem for minor child.


　　Considered by Vaitheswaran, P.J., and Greer and Schumacher, JJ.

**SCHUMACHER, Judge.**

A mother appeals the termination of her parental rights. She claims the State did not provide reasonable efforts to reunite the family and contends termination is not in the child's best interest. We find the mother failed to preserve her claim concerning reasonable efforts. We also find termination is in the child's best interests. Accordingly, we affirm.

## I.  Background Facts & Proceedings

This family became involved with the Department of Human Services (DHS) after the child ran away from home and crashed his mother's car.[1] The child, age twelve at the time of the termination hearing, was briefly placed at a shelter, then returned to his mother. A child-protection worker visited the home shortly after the child returned home. The child was wearing only underwear because the mother locked the rest of his clothes away to prevent him from running away again. The child's room contained only a mattress. And the child was allowed to leave his room only to use the restroom and eat. Based on those findings, the child was removed from parental custody and placed at a shelter in June 2020. Shortly after, the child was placed with a legal parent.[2] The child has remained with this parent for the duration of the proceedings. The child was adjudicated a child-in-need-of-assistance (CINA) pursuant to Iowa Code section 232.2(6)(c)(2) (2020) on September 9, 2020.

---

[1] The family was previously involved with DHS from 2012 to 2017.

[2] The child's biological father also had his parental rights terminated in this case and does not appeal. D.R.'s legal parent remains married to D.R.'s mother, but they have been separated for several years.

The mother and child began visits shortly after removal. The child resisted visits, indicating to caseworkers that he did not feel safe with his mother. Despite the child's claims, initial visits were reported to go fairly well. However, a supervised visit on November 10, 2020, turned violent after the mother became upset with the child over a board game. The mother and child got into a physical altercation, culminating in the child threatening to kill the mother. Law enforcement was called, and the child was returned to his placement. Visits were suspended for two weeks following the altercation. Once they resumed, two staff members were required to be present and visits took place at the provider location.

The child later indicated that he only participated in the resumed visits because he felt he had to protect his two younger siblings. Another altercation occurred during a supervised visit in April 2021 after the child refused to discard a stick, resulting in the mother straddling D.R. on the floor and punching and slapping him. When the worker instructed the mother to get off the child, the mother stated, "she could do whatever the fuck she wanted to her son" and the worker needed to "get the fuck out of her house." After the child was able to free himself from the mother, another wrestling match ensued between the mother and child and resulted in the worker being kicked in the stomach by the child. Law enforcement once again had to be called. The altercation resulted in a founded child-abuse assessment against the mother, with D.R. named as the victim.[3] After consulting

---

[3] Abuse against one of D.R.'s younger siblings resulted in another founded child-abuse assessment the same month. The younger siblings were removed from the mother's care. A founded child-abuse assessment against the mother was previously completed in 2007 for physical abuse, denial of critical care, and failure to provide proper supervision. A child-abuse assessment for physical abuse was also confirmed against the mother in 2015.

the child's therapist and the guardian-ad-litem (GAL), DHS suspended visits due to concerns over the safety of both the mother and child, as well as the child's vehement opposition to contact with his mother. The mother and child have not had scheduled visits since April 2021.

The child has engaged in therapy since June 2020. The therapist informed DHS that even discussing the child's mother caused unnecessary stress and was detrimental to D.R.'s mental health. The therapist testified at the termination hearing and informed the court that the child has been opposed to further contact with the mother for nearly the entire duration of these proceedings. The therapist supported termination of the mother's parental rights because the child needed a permanent resolution to his troubled relationship with the mother.

The mother has been engaged in therapy for over ten years. Despite that, concerns were raised over whether she has reached maximum medical benefits. Due to a recent pregnancy, the mother stopped taking her medications. She testified at the termination hearing that she recognizes she has not been a perfect parent, but largely denies much of the abuse that she committed. She also testified that she believes there is a place for physical discipline when caring for a child.

The State filed a petition to terminate the mother's parental rights on December 2, 2021. The hearing took place on February 4 and 25, and March 31, 2022. The court terminated the mother's parental rights pursuant to Iowa Code section 232.116(1)(d) and (g) (2021). The mother appeals.[4]

---

[4] We urge appellants to comply with Iowa Rule of Appellate Procedure 6.201(1)(e)(2), which states, "[T]he appellant[s] shall attach to the petition on appeal a copy of [t]he petition for termination of parent rights and any amendments to the petition [and t]he order or judgment terminating parental rights. . . ."

**II.    Discussion**

The mother claims DHS did not provide reasonable efforts to reunite the family.  She also claims termination is not in the best interest of the child.  We review the termination of parental rights de novo.  *In re T.S.*, 868 N.W.2d 425, 431 (Iowa 2015).

**A.    Reasonable Efforts**

The mother claims DHS did not provide reasonable efforts because they suspended visitation in April 2021.  The State must provide reasonable efforts to reunite the family prior to termination.  *See* Iowa Code § 232.102(7).  Such efforts generally include visitation.  *In re C.H.*, 652 N.W.2d 144, 147 (Iowa 2002).  However, this court has previously explained the necessity of raising the issue at the proper time:

> While the State has an obligation to provide reasonable services to preserve the family unit, it is the parent's responsibility "to demand other, different, or additional services *prior* to the termination hearing."  Complaints regarding services are properly raised "at removal, when the case permanency plan is entered, or at later review hearings."  Where a parent "fails to request other services at the proper time, the parent waives the issue and may not later challenge it at the termination proceeding."  Similarly, we will not review a reasonable efforts claim unless it is raised prior to the termination hearing.

*T.S.*, 868 N.W.2d at 442 (internal citations omitted) (quoting *In re M.Y.R.*, No. 11-1139, 2011 WL 5389436, at *7 (Iowa Ct. App. Nov. 9, 2011)).

Here, the mother only raised her objections to the services provided to her at the termination hearing.  While she testified that she asked DHS employees to restart visitation fifty to sixty times, that is insufficient to preserve the issue for our review.  *See C.H.*, 652 N.W.2d at 148 ("[V]oicing complaints regarding the

adequacy of services to a social worker is not sufficient. A parent must inform the juvenile court of such challenge."). Here, the mother failed to notify the juvenile court any time after the suspension of the visits and prior to the termination hearing.[5] She has not preserved her claim by objecting to DHS's efforts prior to termination and we do not consider it.[6]

### B. Best Interest of the Child

The mother claims termination is not in the child's best interests. She contends that termination is unnecessary given the child's placement with their legal parent. Additionally, she suggests that guardianship with that placement would allow reconciliation in the future. When considering the best interests of the child, we "give primary consideration to the child's safety, to the best placement

---

[5] Even if we were to consider the mother's reasonable efforts argument preserved, DHS made reasonable efforts to reunify the family after the suspension of the visits by offering other services, but the mother often refused to communicate or respond with DHS or service providers. For example, during a parent and psychological assessment with Dr. Lestina in October 2021, the mother was rude and non-compliant, and was asked to leave the evaluation prior to completion. She remarked, "Bye bitch" to the evaluator upon departure. We acknowledge that the reasonable efforts concept broadly includes a visitation arrangement "designed to facilitate reunification while protecting the child from the harm responsible for the removal." *In re M.B.*, 553 N.W.2d 343, 345 (Iowa Ct. App. 1996). "Visitation, however, cannot be considered in a vacuum. It is only one element in what is often a comprehensive, interdependent approach to reunification. If services directed at removing the risk or danger responsible for a limited visitation scheme have failed its objective, increased visitation would most likely not be in the child's best interests." *Id.*

[6] The mother claims she preserved error by timely filing a notice of appeal. However, filing a notice of appeal is insufficient to preserve error for our review. *See* Thomas A. Mayes & Anuradha Vaitheswaran, *Error Preservation in Civil Appeals in Iowa: Perspectives on Present Practice*, 55 Drake L. Rev. 39, 48 (2006) ("While this is a common statement in briefs, it is erroneous, for the notice of appeal has nothing to do with error preservation.").

for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2).

Termination is in the child's best interests. D.R.'s therapist indicated that even talking about his mother causes undue stress to [D.R.'s] mental health and affected the child's behavior. The therapist supported termination, noting D.R.'s need to have a permanent decision regarding his relationship with his mother. Such need for permanency means a guardianship under the child's legal parent would be inappropriate in this case. *See In re A.S.*, 906 N.W.2d 467, 477 (Iowa 2018) (noting that guardianships are not a legally preferable outcome due to the lack of permanency they entail). Since visits with his mother ceased, D.R.'s behavior and mental health have improved. He has been adamant for nearly two years that he does not want contact with his mother, only conceding to contact from November 2020 through April 2021 because he felt he needed to protect his siblings. Such resistance is due in large part to the child feeling unsafe due to past physical abuse by his mother.

The mother has been inconsistent with her own therapy and appears to have stopped taking medication. There are also concerns that after ten years of therapy, the mother has reached maximum benefits and is still not in a position to safely parent. She refused to concede at trial that the physical discipline imposed on D.R. was inappropriate. Termination is in D.R.'s best interest.

**AFFIRMED.**