# IN THE COURT OF APPEALS OF IOWA

No. 22-1896
Filed April 12, 2023

**IN THE INTEREST OF E.B.,**
**Minor Child,**

**B.D., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Fayette County, Linnea M.N. Nicol, District Associate Judge.

A mother appeals the termination of her parental rights. **AFFIRMED.**

Sarah Dooley Rothman of Rothman Law Office, Independence, for appellant mother.

Brenna Bird, Attorney General, and Ellen Ramsey-Kacena (until withdrawal) and Mary A. Triick, Assistant Attorneys General, for appellee State.

Kimberly Lange of Juvenile Public Defender's Office, Waterloo, attorney and guardian ad litem for minor child.

Considered by Bower, C.J., and Badding and Buller, JJ.

**BADDING, Judge.**

A mother appeals the termination of her parental rights to her child under Iowa Code section 232.116(1)(f) (2022), contending her rights should not have been terminated because (1) she was not the reason for the underlying child-in-need-of-assistance proceeding, (2) reasonable efforts at reunification were not made, and (3) a guardianship should have been established instead of termination.[1]  We affirm on our de novo review of the record.  *See In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022).

1.      *Reason for adjudication.*  The mother is correct that her child—born in 2015—came to the attention of the Iowa Department of Health and Human Services in June 2021 based on allegations that the father was using and selling methamphetamine while caring for him.  At that point, the child had been living with his paternal grandmother, who was his primary caretaker, since he was about two years old.  But he often visited the father outside of the grandmother's home.  During its investigation into the allegations about the father, the department received reports that the mother was also using methamphetamine, though she had not had much contact with the child in the past year.  After the mother tested

---

[1] The father's rights were also terminated, and he does not appeal.  We also note that, after the mother filed her notice of appeal, its timeliness was questioned by an order of the supreme court.  Ultimately, the supreme court granted the mother a delayed appeal.  Yet in her petition on appeal, under the "supporting legal authority" section for each of her claims, she states: "Will supplement if appeal proceeds forward."  *Cf.* Iowa Rs. App. P. 6.201(1)(d) (noting contents of petition on appeal "shall substantially comply with form 5 in rule 6.1401"), .1401–Form 5 (requiring inclusion of "supporting legal authority for each issue raised").  Assuming there was such a mechanism available, the mother never followed through with that supplementation.  While we could find all her claims waived as a result, *see* Iowa R. App. P. 6.903(2)(g)(3), we choose to proceed to the merits.

positive for methamphetamine, the child was removed from his parents' care in July and formally placed with the grandmother, where he has since remained.

The State interprets the mother's claim as a challenge to the sufficiency of the evidence supporting the ground for termination and points out Iowa Code section 232.116(1)(f) does not require a showing that the mother's actions were the cause of removal. We agree. *See In re M.W.* No. 22-0963, 2022 WL 4361792, at *3 (Iowa Ct. App. Sept. 21, 2022) ("[P]hysical removal from one parent 'is sufficient to start the statutory timelines counting toward termination as to either parent.'" (quoting *In re J.E.*, 907 N.W.2d 544, 547 (Iowa Ct. App. 2017))). In any event, while the adjudication order largely focused on the father, the initial removal was sought and obtained based on allegations of the mother's drug use as well. We reject the mother's arguments on this point.

*2. Reasonable efforts.* The mother next claims that the department did not make reasonable efforts at reunification because it did not (1) tell her that her "failure to facilitate [an] investigation into her home would result in termination," (2) "regularly provide the mother with monthly reports," and (3) "provide services to address the history of domestic violence."

The problem with the mother's complaints is that a parent's challenge to reunification efforts must be made when they are offered. *In re C.D.*, 508 N.W.2d 97, 101 (Iowa Ct. App. 1993). While the mother argues that she "frequently" raised these issues at hearings, the record shows that's not the case.[2]

---

[2] The July 2021 adjudication order shows the mother did not request any additional services. The September dispositional order notes she only requested services relating to housing assistance, which she repeated at a December review hearing. Reports from the family support specialist after those orders were entered show

Instead, the mother's first and third complaints were made for the first time at the termination hearing, while her second complaint does not appear to have ever been made. And although her attorney was critical of services providers when cross-examining them, the mother testified that she was never in need of any other services.

Because these complaints were not made sooner, the mother has not preserved error. *See In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2002) (noting complaints must be made to the juvenile court); *In re A.A.G.*, 708 N.W.2d 85, 91 (Iowa Ct. App. 1995) (noting parent's obligation to request specific services must precede the permanency hearing to preserve error for appellate review).

3.      *Guardianship.* Lastly, the mother claims "guardianship of the child with his paternal grandmother was the best available option which still ensured permanency, safety and stability for the child." Although section 232.104(2)(d)(2) allows for the transfer of guardianship and custody to a suitable person or an adult relative as a permanency option, section 232.104(4)(a) requires a showing by convincing evidence that termination would be contrary to the child's best interests. Furthermore, "a guardianship is not a legally preferable alternative to termination." *In re A.S.*, 906 N.W.2d 467, 477 (Iowa 2019) (citation omitted).

The family support specialist testified the child told her that "he wants to live with grandma. It is his home. It's where he feels safe." Neither she, nor the

that housing assistance was provided to the mother. In the March 2022 review order and June permanency order, the court determined the department made reasonable efforts and did not list any other services requested by the mother. The permanency order specified that the court asked the mother about the sufficiency of the services being provided and advised of the consequences of failing to identify a deficiency in services.

department's caseworker, believed a guardianship was appropriate. As the specialist testified, a guardianship "leaves the door open for the parents getting [the child] back and he has expressed that is not what he wants." *See In re R.S.R.*, No. 18-1858, 2011 WL 441680, at *4 (Iowa Ct. App. Feb. 9, 2011) ("So long as a parent's rights remain intact, the parent can challenge the guardianship and seek return of the child to the parent's custody."). The grandmother, while not opposed to allowing contact with the parents, wanted to adopt the child rather than having him placed in her guardianship. We find that result is in the child's best interests, especially since he has been in the grandmother's care for most of his life.

We affirm the termination of the mother's parental rights.

**AFFIRMED.**

Bower, C.J., concurs; Buller, J., concurs specially.

**BULLER, Judge (concurring specially).**

If I were to reach the merits, I would agree with the majority's analysis of the issues. But I believe the mother waived her arguments, for the reasons identified by the majority in footnote one: she did not cite any legal authority in support of her claims. I would summarily affirm the termination of parental rights or dismiss the appeal for failure to comply with the rules of appellate procedure. *See Inghram v. Dairyland Mut. Ins. Co.*, 215 N.W.2d 239, 240 (Iowa 1974) ("To reach the merits of this case would require us to assume a partisan role and undertake the appellant's research and advocacy. This role is one we refuse to assume."); *see also King v. State*, 818 N.W.2d 1, 48 (Iowa 2012) (Wiggins, J., dissenting) ("Our law clerks and judges should not be doing the work of counsel . . . .").