## IN THE COURT OF APPEALS OF IOWA

No. 18-0581
Filed June 20, 2018

**IN THE INTEREST OF K.C. and E.C.,**
**Minor Children,**

**S.C., Mother,**
　　Appellant.

_____

　　Appeal from the Iowa District Court for Linn County, Susan F. Flaherty, Associate Juvenile Judge.


　　Mother appeals from an order terminating her parental rights pursuant to Iowa Code chapter 232 (2017). **AFFIRMED.**


　　Carrie K. Bryner, Cedar Rapids, for appellant mother.

　　Thomas J. Miller, Attorney General, and Meredith L. Lamberti, Assistant Attorney General, for appellee State.

　　Julie Trachta of Linn County Advocate, Inc., Cedar Rapids, guardian ad litem for minor children.


　　Considered by Danilson, C.J., and Mullins and McDonald, JJ.

**MCDONALD, Judge.**

Stacey appeals from an order terminating her parental rights in her children K.C. (born 2004) and E.C. (born 2015) pursuant to Iowa Code section 232.116(1)(f) and (h) (2017). K.C.'s biological father is deceased. E.C.'s biological father consented to the termination of his parental rights, and he does not appeal. On appeal, Stacey challenges the sufficiency of the evidence supporting the statutory grounds authorizing the termination of her parental rights, contends the Iowa Department of Human Services (IDHS) failed to make reasonable efforts towards reunification, and argues termination is not in the best interest of her children.

This court reviews termination proceedings de novo. *See In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). The statutory framework authorizing the termination of a parent-child relationship is well established and need not be repeated herein. *See In re A.S.*, 906 N.W.2d 467, 472–73 (Iowa 2018) (setting forth the statutory framework). The burden is on the State to prove by clear and convincing evidence the statutory grounds authorizing the termination of parental rights and termination is in the best interest of the children. *See In re E.H.*, No. 17-0615, 2017 WL 2684420, at *1 (Iowa Ct. App. June 21, 2017).

We first address the sufficiency of the evidence. Here, the juvenile court terminated Stacey's parental rights pursuant to Iowa Code section 232.116(1)(f) and (h). Stacey challenges only the last element of these similar provisions: whether there is clear and convincing evidence the children could not be returned to her custody at the time of the termination hearing within the meaning of section 232.102. *See* Iowa Code § 232.116(1)(f)(4) and (h)(4). We have interpreted these

provisions to require, among other things, "clear and convincing evidence the children would be exposed to an appreciable risk of adjudicatory harm if returned to the parent's custody at the time of the termination hearing." *In re E.H.*, 2017 WL 2684420, at *1.

On de novo review, we conclude there is clear and convincing evidence proving the children could not be returned to Stacey's care without being exposed to an appreciable risk of adjudicatory harm. The family came to the attention of IDHS after the department received multiple reports Stacey was abusing marijuana, alcohol, and prescription medications; Stacey was leaving the children without supervision; Stacey was neglecting the children's health needs; and the children were living in unsanitary and unsafe conditions. Initially, the department was not able to confirm the reports. Later, IDHS received further reports regarding the family and again investigated the situation. Upon this second investigation, IDHS learned the mother had been evicted and was homeless, the children were living with the parents of one of K.C.'s friends, K.C. had not been living with the mother for a period of years, the mother was using controlled substances, and the mother was not providing adequate physical care for the children. In particular, the record shows E.C. has cystic fibrosis and heightened medical needs. Because of this, he needs extraordinary supervision and physical care, which Stacey admitted she was not providing. For example, E.C. is required to use a therapeutic vest on a daily basis to keep mucus out of his lungs. A tracking system on the vest showed Stacey had used the vest for only 2.5 hours when medical directives provided E.C. should have used the vest for more than 240 hours. Because of these confirmed reports, IDHS removed the children from Stacey's care.

Since the time of removal, Stacey has not demonstrated the capacity to provide care for the children. She continues to abuse controlled substances. Of the seventy-eight times Stacey has been called for drug testing over the life of this case, she no-showed on sixty-three occasions. On those occasions she did test, she tested positive for methamphetamine and marijuana. She has not completed any substance-abuse-treatment program, and she continues to deny use despite all of the evidence to the contrary. The evidence shows Stacey's substance abuse creates an an appreciable risk of harm to the children. Specifically, Stacey's substance abuse interferes with her ability to provide a safe and sanitary living environment for the children and prevents her from meeting the medical needs of E.C. *See, e.g., In re A.B.*, 815 N.W.2d 764, 776 (Iowa 2012) (noting drug addiction can render a parent unable to care for children); *In re L.S.*, No. 17-1824, 2018 WL 540968, at *1 (Iowa Ct. App. Jan. 24, 2018) (providing untreated substance abuse can create a risk of harm to the children); *In re R.P.*, No. 16-1154, 2016 WL 4544426, at *2 (Iowa Ct. App. Aug. 31, 2016) (affirming termination of parental rights of parent with history of drug abuse); *In re H.L.*, No. 14-0708, 2014 WL 3513262, at *3 (Iowa Ct. App. July 16, 2014) (affirming termination of parental rights when parent had history of substance abuse).

We next address whether IDHS made reasonable efforts to facilitate reunification of the family. As part of its burden of proving the children could not be returned to Stacey's care at the time of the termination hearing, the State must prove it made reasonable efforts to return the children to the care of the parent. *See* Iowa Code § 232.102(9) (providing the department of human services must make "every reasonable effort to return the child to the child's home as quickly as

possible consistent with the best interests of the child"). Reasonable efforts "facilitate reunification while protecting the child from the harm responsible for the removal." *In re J.W.*, No. 17-1937, 2018 WL 1099179, at \*2 (Iowa Ct. App. Feb. 21, 2018) (quoting *In re M.B.*, 553 N.W.2d 343, 345 (Iowa Ct. App. 1996)). "[W]hat constitutes reasonable services varies based upon the requirements of each individual case." *In re C.H.*, 652 N.W.2d 144, 147 (Iowa 2002).

Stacey argues IDHS did not make reasonable efforts to facilitate reunification because K.C.'s placement with the maternal aunt and uncle in Oskaloosa interfered with her ability to exercise visitation with the child due to distance between their residence and her residence in Cedar Rapids. We are unpersuaded by Stacey's argument. First, Stacey initially requested the aunt and uncle be considered for placement as she considered the couple a strong support. The juvenile court initially denied the request and placed K.C. in foster care in Cedar Rapids. Subsequently, the juvenile court granted the request, and the child thrived in the placement. Second, the juvenile court considered Stacey's request to move K.C. back to Cedar Rapids for placement and found the placement with the maternal aunt and uncle was in K.C.'s best interest, was a proper concurrent plan placement, and was not a barrier to reunification. Third, although the physical distance was inconvenient, Stacey has not identified any missed visitation or family therapy as a result of the placement. Finally, Stacey received a myriad of services, including supervised visitation, individual counseling for K.C., family counseling, family team meetings, foster family care, transportation assistance, substance-abuse evaluation, drug testing, parenting partner referral, medical services assistance, substance-abuse treatment, mental-health treatment, and family

safety, risk, and permanency services. This is not a case of failure to provide services but rather a lack of utilization of services by the mother.

Stacey contends termination of her parental rights is not in the best interest of her children. In determining the best interest of the children, we "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). When determining best interest, it is important to consider both long-term and short-term interest. *See In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).

The record reflects termination of Stacey's parental rights is in the best interest of the children. Stacey made little to no effort to resolve her substance-abuse problem during the pendency of this case. Indeed, she continued to deny use through the time of the termination hearing. The record shows Stacey's substance abuse impaired her ability to provide adequate care for the physical needs of her children. Indeed, not only was the care inadequate, it was unsafe. In particular, with respect to E.C., Stacey's substance abuse interfered with her ability to meet his heightened medical needs. Both children are now placed in loving homes with adoption potential. K.C. is happy living with her aunt and uncle, enjoys being with her cousins, and is concerned about being returned to her mother. K.C. would like to be adopted by her aunt and uncle. E.C. lives with a foster family that, by all accounts, has provided exceptional care for his medical needs. K.C. and E.C. remain in contact with each other despite their separate placements. Any disruption to the children caused by the termination of Stacey's

parental rights is outweighed by the stability and security their placements and adoption will provide.

We affirm the order of the juvenile court terminating Stacey's parental rights in K.C. and E.C.

**AFFIRMED.**