# IN THE COURT OF APPEALS OF IOWA

No. 18-1114
Filed October 10, 2018

**IN THE INTEREST OF E.S.,**
**Minor Child,**

**M.S., Father,**
     Appellant,

**N.S., Mother,**
     Appellant.

_____

Appeal from the Iowa District Court for Sioux County, Brian L. Michaelson,

Judge.

A father and a mother separately appeal the termination of their parental

rights. **AFFIRMED ON BOTH APPEALS.**

Kevin J. Huyser of Rensink Pluim Vogel & Huyser, Orange City, for

appellant father.

Timothy J. Kramer of Kramer Law Firm, PLC, Sioux Center, for appellant

mother.

Thomas J. Miller, Attorney General, and Anagha Dixit, Assistant Attorney

General, for appellee State.

Jenny L. Winterfeld of Winterfeld Law, PLC, Sioux Center, guardian ad litem

for minor child.

Considered by Danilson, C.J., and Vogel and Tabor, JJ.

**DANILSON, Chief Judge.**

A father and a mother separately appeal from the termination of their parental rights pursuant to Iowa Code section 232.116(1)(d), (h), and (i) (2018). Because we find clear and convincing evidence supports termination under paragraph "h"[1] and that termination of parental rights is in the child's best interests, we affirm.[2]

In our de novo review of the April 2018 termination proceedings,[3] we find the following. The mother has four children. The child at issue in this appeal, E.S., was born in May 2015. E.S. has two older siblings; B., age fifteen at the time of termination, and P., age twelve; and one younger sibling, E.J.S., born in November 2017 during the underlying child-in-need-of-assistance (CINA) proceedings. The father of E.S. is also the father of E.J.S.

The father is an over-the-road trucker. He has a history of anxiety and depression and has admitted to prior use of marijuana. He takes medication for attention deficit hyperactivity disorder (ADHD).

---

[1] Under section 232.116(1)(h), a juvenile court may terminate parental rights when:
    (1) The child is three years of age or younger.
    (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
    (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
    (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

[2] When a juvenile court relies on multiple statutory grounds to terminate a parent's rights, we may affirm on any supported ground. *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012).

[3] *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014) (noting scope of review in termination proceedings).

The mother works in the service industry. She has acknowledged using drugs in the past. She has previously been diagnosed with ADHD, manic-depressive bipolar disorder, and an anxiety disorder. More recently, the mother was diagnosed with major depressive disorder, recurrent episode, moderate; generalized anxiety disorder, unspecified trauma; and a stress-related disorder.

On September 7, 2016, child protective services received allegations of physical abuse of P., then ten years old, who had a black right eye, a scratch from his left eye to his nose, bruising by both ears, a swollen jaw, circular bruises on his arms, and bruises on his thigh and chest. P.'s explanation for the injuries was inconsistent with the nature of his injuries. A medical expert who reviewed photographs taken of the child determined the injuries were inflicted.

Family Safety, Risk, and Permanency (FSRP) services were implemented with the family in September 2016—when the investigation began. The unsanitary condition of the home when the children were still living with the parents was a concern to service providers.

On December 9, 2016, E.S., P., and B. were adjudicated CINA. The underlying reasons included nine child-abuse assessments completed concerning these children spanning eight years, including a founded child-abuse report where P. was the victim of physical abuse with the perpetrator unidentified at the time. At the CINA adjudicatory hearing, both parents asserted P.'s injuries were self-inflicted. The mother wanted the department of human services (DHS) involved to try to determine why the child was acting out. B. also told authorities that P.'s injuries were self-inflicted.

P. and B. later reported the father physically abused both of them. On February 3, 2017, all three children were removed from the custody of the mother and father.

On February 17, 2017, criminal charges were filed against the mother and the father. Combined, they were charged with twenty-two counts of felony neglect of a dependent person and felony child endangerment causing bodily injury. The district court issued no-contact orders prohibiting the parents from having any contact with B., P., and E.S. While none of the criminal charges asserted E.S. was the victim, the district court concluded the child "would be subject to emotional mental harm from observing the alleged abuse upon the other two children." The district court concluded the no-contact order with respect to E.S. was valid, and further found that "based on the exhibits, testimony, and matters of judicial notice, as well as the trial information and minutes of testimony, the no-contact order should not be dismissed as to any of the three children [B., P., or E.S.]"

There have been several child-abuse assessments resulting in a finding of child abuse concerning the three oldest children. With respect to the mother—in 2003, an abuse assessment found the mother failed to provide proper supervision and shelter to her oldest child, B., and the child had illegal drugs in his system; in 2009, another founded report of the same charges against the mother concerning the two oldest children, B. and P.; and in March 2017, an assessment found the mother failed to provide B., P., and E.S. proper supervision. With respect to the father—in 2016, a child-abuse assessment found he physically abused P.; in January 2017, an assessment again found he physically abused P.; and in March 2017, an assessment found the father failed to provide proper supervision to B.,

P., and E.S. There have been concerns throughout all of the assessments regarding physical abuse of the children, the children's personal hygiene, conditions of the family residence, and the children being guarded about providing information to others.

On April 2, 2018, the father and the mother pled guilty to four counts of child endangerment—all aggravated misdemeanors. The father received a four-year prison sentence, which is currently pendi`ng on appeal. The mother received a four-year suspended prison sentence with probation. However, the sentencing order also provided that she may be ordered to go to a residential treatment facility if her probation officer feels it would be necessary. An April 23 DHS case plan noted the mother told a service provider she and the father entered pleas but did so only to have the no-contact order with E.S. lifted.

Although the parents entered the guilty pleas in the criminal proceedings, the parents have not accepted any responsibility for the actions of abuse toward the children in the juvenile action, and thus the safety risks of physical abuse to children in the home have not been the subject of rehabilitative services. The father did complete a six-hour anger-management class. But, the father and the mother have not spoken to providers about the abuse that occurred in the home nor is there any evidence that they have taken any steps to address parenting issues in therapy—except as identified by the father's counselor.

The father's counselor submitted a letter on April 16, 2018, noting the father had attended thirteen sessions since February 16, 2017, and the purpose of therapy being

> to explore [the father's] emotional responses to the multitude of stressors and transitions he and his family have been facing. Specifically we have addressed [the father's] expression of emotion, his expression as it relates to parenting and how he might use healthier emotional regulation. We continue to connect emotional regulation with behavior regulation as well.

However, there is nothing suggesting the father has accepted responsibility for the child abuse. There is nothing suggesting he is working on issues concerning his role in the child abuse or concerning the harmful effects of violence to children in the household.

The mother is not currently attending therapy sessions, and her past attendance has been sporadic. Her therapist identified that the mother continues to work on goals to decrease depression, improve functioning, and demonstrate positive parenting practices. No information was given as to whether the mother acknowledged that child abuse occurred, that she had a role in allowing it to occur, or that she is working toward a goal of learning to protect her children from abuse.

The home in which the mother and father continue to reside has been observed to be very cluttered and to have a strong odor of urine and feces due to the presence of four dogs in the home. Despite months of working on the problem of possible safety risks in the home, a service provider testified the home was not suitable or sufficiently sanitary for the children to be present.

Both parents argue that they should not be compelled to admit abuse and look for support from *In re C.H.*, 652 N.W.2d 144 (Iowa 2002). There, our supreme court stated, "The State may not penalize [a parent] for noncompliance with a court order impinging on his right against self-incrimination." *C.H.*, 652 N.W.2d at 150. However, we note the court also stated:

> But this is as far as the Fifth Amendment privilege extends. The State may require parents to otherwise undergo treatment, but it may not specifically require an admission of guilt as part of the treatment. Contrary to [the father's] assertions, a person's exercise of a constitutional right *may* indeed have consequences. One such consequence may be a person's failure to obtain treatment for his or her problems.

*Id.* Our supreme court has recently reaffirmed that statement:

> The State's clear and convincing evidence also shows that [the parents] continue in their refusal to cooperate with DHS to develop the parenting skills necessary to parent L.H. safely. They both continue to minimize and/or deny the presence of domestic violence in their relationship. An important aspect of a parent's care for his or her child is to address his or her role in the abuse of the child. *See C.H.*, 652 N.W.2d at 150-51 (noting that a "parent's failure to address his or her role in the abuse may hurt the parents' chances of regaining custody and care of their children" and upholding the termination of parental rights for a parent due to the parent's continuous refusal to comply with the case permanency plan). [The father] continues to put his own needs before those of L.H. by refusing to cooperate in any manner with DHS to address his role in the domestic violence and the imminent risk of harmful effects domestic violence creates for children who experience it in their household.

*In re L.H.*, 904 N.W.2d 145, 153 (Iowa 2017).[4] We conclude E.S. cannot be returned to the care of the parents safely because they have not engaged in any meaningful services addressing the risks of physical abuse in the home.

---

[4] The court continued:

> As the record shows, [the father] refused to make any contact with DHS despite its repeated attempts; he refused to participate in L.H.'s social history or answer any questions about it in court; and he refused to take a paternity test confirming he was the biological father of L.H. until he was court-ordered to do so. In addition to [the father's] refusal to cooperate, [the mother] also has made clear that she will not cooperate with any DHS efforts to protect L.H. from [the father] unless it is court-ordered. Moreover, [the father] has declined to address his long-standing anger management issues and violent tendencies. Thus, [*the father*] *refuses to meaningfully address the issues of abuse within the household that he shares with* [*the mother*] *and L.H.* Given [the father's] history of domestic violence, combined with his lack of participation throughout this process, the juvenile court was correct to adjudicate L.H. a child in need of assistance under

Both parents argue that the father's physical abuse was directed toward his stepchildren and not E.S. The mother asserts, "The physical abuse allegations in this case centered on the conduct of [the father] that was directed toward [P.] and [B.] [He] is not the father of [P.] and [B.] and they will not be returning to [the] home." Apparently, we are to infer the father of E.S. will not abuse his biological children, only his stepchildren. This assertion does not assuage our concerns.[5]

The mother and father both pled guilty to four counts of aggravated misdemeanor child abuse. The mother's sentence was suspended and she has been placed on probation. The father received a four-year prison sentence. The mother has chosen to remain with the father and consented to the termination of her parental rights as to her older two children, whom she acknowledges the father has abused. Neither parent has addressed the safety issues to their children stemming from the use of physical aggression against children in the home. The mother is not engaged in any treatment.

Both parents argue they should be granted an additional six months to work toward reunification now that they have pled guilty and the no-contact order with

_____

Iowa Code section 232.2(6)(c)(2), based on the harmful effects the child is imminently likely to suffer due to [the father's] domestic violence.

*L.H.*, 904 N.W.2d at 153–54 (emphasis added).

[5] In two recent cases we have reached opposite results in determining if a child should be adjudicated a CINA because another child in the same family was abused. *Compare In re B.B.*, No. 18-0558, 2018 WL 4361055, at *3–4 (Iowa Ct. App. Sept. 12, 2018) (concluding there was insufficient evidence to adjudicate E.B. a CINA although another child in the home had been abused), *with In re D.B.*, No. 17-0740, 2017 WL 4317337, at *6 (Iowa Ct. App. Sept. 27, 2017) (concluding the abuse was so pervasive and unavoidable by the other children that the home environment had normalized the abuse). Each case stands on its own facts. Here, there is not a safe parental home as existed in *B.B. See* 2018 WL 4361055, at *3–4. Rather, the parents in this action seek to return the child to the family home and, as we have stated, "[u]ntil the root of the abusive behavior is resolved, all children in the home remain at risk of imminent harm." *D.B.*, 2017 WL 4317337, at *6.

E.S. has been lifted. Iowa Code section 232.104(2)(b) permits the court to grant an additional six months to work toward reunification but requires: "An order entered under this paragraph shall enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination for the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." E.S. is now three years old and has had no contact with the mother and father for more than one year because of the no-contact order. Even if contact between the parents and child might now be allowed, there is little to no relationship at this point. Concerns about physical abuse and a clean and safe home remain. An extended reunification process would be required. If the father's appeal is unsuccessful, he likely will be incarcerated for some time not to exceed four years, and the mother may be ordered into a residential treatment facility. We cannot say the need for removal of the child will no longer exist in six months and, thus, we agree with the juvenile court an extension was not warranted.

Both parents argue termination of their parental rights is not in E.S.'s best interests. When considering the best interest of the child, we primarily consider the child's safety; opportunity for growth; and the physical, mental, and emotional needs before authorizing termination. *See* Iowa Code § 232.116(2). We, like the trial court, conclude the child's best interests lie in termination of the parents' parental rights and permanency with the pre-adoptive foster family.

The mother argues that E.S. should not be separated from her full sibling, E.J.S. But E.S. was about a year and a half old when she and E.J.S. were removed from the parents' home. E.S. and E.J.S. shared a home for about two weeks—

more than a year ago now.  E.S. has been placed in the same foster home as her sibling P. since June 2017, and the two are thriving in the foster home.  The mother places no importance on the fact E.S. would be separated from her sibling P., with whom E.S. shares a strong bond.  The DHS social worker testified that separating E.S. and P. would be detrimental to both of them.  The foster parents are ready, willing, and able to adopt them both.  It is in E.S.'s best interests to terminate both parents' parental rights.

We have considered both of the parents' arguments, whether specifically addressed or not.  We affirm the termination of parental rights.

**AFFIRMED ON BOTH APPEALS.**