# IN THE COURT OF APPEALS OF IOWA

No. 19-1831
Filed January 9, 2020

**IN THE INTEREST OF D.B.,**
**Minor Child,**

**N.B., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Linn County, Barbara H. Liesveld, District Associate Judge.

A mother appeals the termination of her parental rights to her daughter. **AFFIRMED**.

Patrick Bigsby of State Public Defender, Cedar Rapids, for appellant mother.

Thomas J. Miller, Attorney General, and Meredith L. Lamberti, Assistant Attorney General, for appellee State.

Katherine Eastvold, North Liberty, attorney and guardian ad litem for minor child.

Considered by Doyle, P.J., and Tabor and Schumacher, JJ.

**SCHUMACHER, Judge.**

D.B. was born in September 2018. She was removed from parental custody when she was approximately ten days old and placed in foster care, where she has remained throughout the life of this case. There has not been a trial period at home. The initial removal occurred when the mother's boyfriend was arrested for domestic violence in the presence of baby D.B. after he struck the mother, pulled her hair, knocked her to the ground, and stabbed her in the forearm. At the time of this removal, concerns existed regarding the presence of rats, cockroaches, and black mold in the home where the mother was staying with the baby. The mother admitted to relapsing on cocaine and alcohol.

The mother, age thirty-one years at the time of the termination hearing, has an extensive history of substance-abuse and mental-health issues. In her appeal, the mother argues that the trial court erred by (1) finding that reasonable efforts were made to reunify D.B. with her mother, and (2) failing to grant the mother a six-month extension to work toward reunification.

The district court terminated the mother's parental rights pursuant to Iowa Code section 232.116(1)(h) and (*l*) (2019).[1] On our independent review of the

---

[1] Section 232.116(1), provides in relevant part:

> Except as provided in subsection 3, the court may order the termination of both the parental rights with respect to a child and the relationship between the parent and the child on any of the following grounds:
>
> . . . .
>
> h. The court finds that all of the following have occurred:
> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months,

record, we affirm termination of the mother's parental rights.[2]  We find the record reflects that the Iowa Department of Human Services (DHS) made reasonable efforts to reunify D.B. with her mother during the nearly one-year period from the child's removal to the date of the termination hearing.  We further find that an additional six months' time would be insufficient to resolve the mother's substance-abuse and mental-health issues.

I.   Facts and Prior Proceedings

Since birth, D.B. has been the subject of three separate founded child-abuse reports completed by DHS. The first founded child-abuse report concerned the events that led to the initial removal of D.B. from parental custody.  A second founded child-abuse report was completed when the mother was arrested for assault while displaying a deadly weapon thirteen days after her daughter's birth.  At the time of the assault, the mother was brandishing a switchblade.  The third founded child-abuse report was due to the purchase of crack cocaine by the

---

or for the last six consecutive months and any trial period at home has been less than thirty days.

(4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

. . . .

l. The court finds that all of the following have occurred:

(1) The child has been adjudicated a child in need of assistance pursuant to section 232.96 and custody has been transferred from the child's parents for placement pursuant to section 232.102.

(2) The parent has a severe substance-related disorder and presents a danger to self or others as evidenced by prior acts.

(3) There is clear and convincing evidence that the parent's prognosis indicates that the child will not be able to be returned to the custody of the parent within a reasonable period of time considering the child's age and need for a permanent home.

[2] The father's rights were also terminated.  He does not appeal.

mother, providing the baby with inadequate shelter, and the mother assaulting her boyfriend in D.B.'s presence.

The mother has been unable to stay sober. When not incarcerated, she drinks daily, approximately seven alcoholic drinks per day. The mother admits that she is a danger to herself and others when intoxicated. We first recognize that, while the mother is of relatively young age, the record reflects sixty-two alcohol or drug related convictions since 2006, including three separate convictions for public intoxication while she was pregnant with D.B. The mother tested positive for cocaine twice during her pregnancy with D.B., in June and August 2018. D.B., however, did not test positive at birth. The mother also suffers from mental-health issues, including schizoaffective disorder, depression, and anxiety. The mother was a victim of physical, sexual, and emotional abuse as a child.

D.B. was adjudicated to be a child in need of assistance on September 26, 2018. The mother failed to complete a mental-health evaluation. After the removal and while on probation for domestic violence, she was court ordered to a halfway house as part of her criminal proceedings. She absconded from that court-ordered facility and was arrested two days later on a new theft charge for stealing alcohol. At the time of the termination hearing, her probation for the domestic violence conviction had been revoked and she was incarcerated, with four to seven months remaining on her criminal sentence.

II. Discussion

We turn first to the mother's argument that the State failed to make reasonable efforts to reunify mother and daughter. Concerning her substance abuse, she contends on appeal that DHS "failed to provide assistance in her intake

and subsequent completion of that inpatient substance abuse treatment." She further argues that in relation to her mental health, DHS "failed to take appropriate measures" and left the mother "without the necessary support required by law."

"The State must show reasonable efforts as a part of its ultimate proof the child cannot be safely returned to the care of a parent." *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000); *see also* Iowa Code § 232.102(9) (providing that if custody is transferred to DHS, it "shall make every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interests of the child").

Although DHS must make reasonable efforts in furtherance of reunification, with some exceptions not applicable here, parents have a responsibility to object when they claim the nature or extent of services is inadequate. *See C.B.*, 611 N.W.2d at 493–94. A parent's objection to the sufficiency of services should be made "early in the process so appropriate changes can be made." *Id.* "In general, if a parent fails to request other services at the proper time, the parent waives the issue and may not later challenge it at the termination proceeding." *In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2002).

The State argues that the mother failed to preserve error concerning the issue of reasonable efforts. The record supports that the mother requested changes regarding possible treatment placements. As such, we find error was preserved. However, in spite of this preservation-of-error determination, we find the mother's argument that DHS failed to make reasonable efforts to be unavailing. Since D.B.'s removal, the mother was offered supervised visitation; family safety, risk, and permanency services; a mental-health evaluation and mental-health

treatment; medication management; a substance-abuse evaluation; drug testing; family team meetings; parenting instruction; a parent partner referral; housing applications; transportation assistance; supervision through the Iowa Department of Corrections; Iowa domestic abuse program classes; and family foster care. While the mother argues that she should have been permitted to enter Heart of Iowa with her daughter, the facility declined to accept the mother. She was offered alternate treatment programs, which she rejected.

The mother failed to follow through with substance-abuse treatment. Following D.B.'s removal, she was arrested on three separate occasions. She failed to cooperate with court-ordered drug testing. She was unable or unwilling to internalize parenting instruction. When provided information or instruction from the foster parents or providers, she responded with profanity. Based on the record, we agree with the trial court that reasonable efforts were made by DHS to aid in reunification of D.B. and the mother.

We turn next to the mother's argument concerning the trial court's failure to grant the mother a six-month extension to work on reunification efforts. The mother argues that she should have been granted an extension to allow her to complete her remaining term of incarceration. We find this argument to be without merit. When requesting to continue placement, the statute requires a finding that the need for removal will no longer exist at the end of the six-month period. *See* Iowa Code § 232.104(2)(b); *In re E.B.*, No. 13-1645, 2014 WL 69884, at *2 (Iowa Ct. App. Jan. 9, 2014).

After the birth of D.B., the mother refused to complete inpatient and outpatient treatment programs. On one occasion, she refused to be admitted to

an inpatient treatment program because she was not able to smoke while in treatment. On another occasion, she stayed at an inpatient program for approximately four hours. While she attended an initial intake appointment for an intensive outpatient program, she failed to attend any of the classes. She refused to comply with court-ordered drug testing.

Due to her probation revocation following arrests for public intoxication, she was court ordered to a halfway house. Her overall compliance with services improved during her stay at the halfway house. However, she absconded prior to completing that program. She was arrested following her departure two days later for theft of alcohol and interference with official acts. She failed to follow the officers' instructions and had to be carried to the patrol vehicle. The mother's visits with D.B. have never progressed beyond fully supervised due to untreated substance-abuse and mental-health issues, lack of stable housing, and lack of consistent contact with DHS. The mother attended sixty-one percent of her scheduled visits with her daughter, with some of the visits terminated early when the mother's escalation caused distress to D.B.

As we have previously stated, "[T]here are a number of stern realities faced by a juvenile judge in any case of this kind. Among the most important is the relentless passage of precious time. The crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems." *In re P.M.*, No. 19-1375, 2019 WL 6358220, at *2–3 (Iowa Ct. App. Nov. 27, 2019) (quoting *In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987)). Given the mother's lack of progress, we find the same reasoning controls the mother's request for an

extension.  We conclude an extension of time was not warranted based on the record.

**AFFIRMED**.