# IN THE COURT OF APPEALS OF IOWA

No. 19-1806
Filed March 4, 2020

**IN THE INTEREST OF C.Y.,**
**Minor Child,**

**D.Y., Father,**
　　Appellant.

_____

Appeal from the Iowa District Court for Sioux County, Daniel P. Vakulskas, District Associate Judge.

A father appeals the termination of his parental rights.  **AFFIRMED.**

Kley B. De Jong of Klay Law Office, Orange City, for appellant father.

Thomas J. Miller, Attorney General, Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Jenny L. Winterfeld of Winterfeld Law, P.L.C., Sioux Center, attorney and guardian ad litem of minor child.

Considered by Bower, C.J., and Greer and Ahlers, JJ.

**AHLERS, Judge.**

This child came to the attention of the Iowa Department of Human Services (DHS) when it was discovered the child was significantly underfed and malnourished. Services offered to the parents to help them correct their parenting deficiencies were not successful. As a result, the parents' parental rights were terminated. The child was two years old at the time termination was ordered. The father appeals.[1]

We review termination proceedings de novo. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010).

We use a three-step analysis to review termination-of-parental-rights proceedings. *A.S.*, 906 N.W.2d at 472. We first consider whether any of the statutory grounds laid out in Iowa Code section 232.116(1) have been established. *Id.* at 472–73. Second, we consider "whether the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights." *Id.* at 473 (quoting *In re M.W.*, 876 N.W.2d 212, 219–20 (Iowa 2016)). Finally, "we consider whether any exceptions in section 232.116(3) apply to preclude termination of parental rights." *M.W.*, 875 N.W.2d at 220. Because the father does not challenge the juvenile court's determination that terminating his parental rights is in the child's best interests or that any of the permissive factors in section 232.116(3) preclude

---

[1] The juvenile court also terminated the mother's parental rights. The mother does not appeal.

terminating his parental rights, we do not consider the second and third steps. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

The juvenile court terminated the father's parental rights pursuant to Iowa Code section 232.116(1)(d), (h), and (i) (2019). While the juvenile court found three grounds for terminating the father's rights, we only need to find one of the grounds was supported to affirm. *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012); *In re J.B.L.*, 844 N.W.2d 703, 704 (Iowa Ct. App. 2014). In this case, we find support for termination pursuant to section 232.116(1)(h), which requires the State to prove four elements:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

The father only disputes element (4) on appeal. He argues he now has "all of the basic building blocks in place" to take care of the child and his parental rights should not be terminated because he "has displayed tremendous efforts towards improving his situation and skills." He also asserts the child's malnourishment was the fault of the mother and should not impair his ability to regain custody of the child. Finally, he characterizes the criticisms of his parenting ability as differences in parenting style rather than objective dangers to the child.

Based on our de novo review of the record, we conclude there is clear and convincing evidence the child could not be safely returned to the father's care at

the time of the termination hearing. *See D.W.*, 791 N.W.2d at 707 (noting section 232.116(1)(h)(4) requires a showing that the child could not be returned to the parent's custody "at the time of the termination hearing"). In terms of the original removal being the fault of the mother, as urged by the father, the record shows the father was equally involved in the child's care during the period of time when the child became malnourished. His efforts to blame the mother for the child's condition are not persuasive. Even if the mother was primarily responsible for feeding the child, the father had extensive opportunity during his watch to notice the shortcomings and the effects on the child. He is just as much to blame for the child's malnourished condition as the mother.

Once the child's malnourishment issue was resolved, the case remained open because the parents had numerous parenting-skills deficiencies. The father argues the claimed shortcomings of his parenting are simply differences of opinion as to the best way to parent a child. He notes the criticism of his parenting included putting the child's diaper on wrong, failing to display affection in the way the service provider would have liked, utilizing a "cry it out" approach at nap time, and failing to accurately diagnose a fever. While the father is correct that these types of shortcomings may be expected of any first-time parent, his argument ignores the big picture, the amount of time that had passed, and the amount of services that had been provided to the father. The record shows the father struggled to internalize the skills necessary to properly care for the child or to recognize her needs. The father was offered services and educational programs to teach him parenting skills. He declined to participate in the educational programs offered to him, choosing instead to participate in a "play-focused" program. Leading up to a

permanency hearing, the DHS worker noted the father "struggles with the basic parenting routine." The father was unable to properly diaper the child, and he blamed the child for his inability to do so. The DHS worker observed the father frequently did not wash the child's face, hair, and clothing unless directed. On one occasion, the child returned from visiting the father with a temperature of 102 degrees, but the father did not appear to recognize the child was ill. These parenting mistakes may be excusable a time or two early in the career of a first-time parent. They are not nearly as excusable at the stage to which this case had progressed. These mistakes by the father were still being made after many months of intensive help by service providers and during a six-month extension the father had been granted to give him additional time to learn how to take care of the child.[2] These examples of parenting deficiencies help illustrate the ways the father is still unable to address the child's needs. We conclude clear and convincing evidence supports terminating the father's parental rights under Iowa Code section 232.116(1)(h).

Additionally, the father argues DHS failed to meet its obligation under section 232.102(7) to "make every reasonable effort" to return the child to the father's care by refusing to give the father overnight or weekend-long visitation opportunities. However, the record shows the father never requested additional visitation during these proceedings, and he did not raise this argument before the juvenile court. The father cannot raise this argument for the first time on appeal.

---

[2] Prior to termination-of-parental-rights proceedings being initiated, a permanency order was issued in the underlying child-in-need-of-assistance proceeding giving the parents an additional six months to work toward reunification pursuant to Iowa Code section 232.104(2)(b).

*In re L.M.*, 904 N.W.2d 835, 839–40 (Iowa 2017) ("[P]arents have a responsibility to object when they claim the nature or extent of services is inadequate."); *In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2002) ("In general, if a parent fails to request other services at the proper time, the parent waives the issue and may not later challenge it at the termination proceeding.").

We affirm the decision of the juvenile court.

**AFFIRMED.**