# IN THE COURT OF APPEALS OF IOWA

No. 21-0937
Filed September 1, 2021

**IN THE INTEREST OF L.B.,**
**Minor Child,**

**K.B., Mother,**
　　Appellant.

_____

Appeal from the Iowa District Court for Pottawattamie County, Eric J. Nelson, District Associate Judge.

The mother appeals the juvenile court order terminating her parental rights. **AFFIRMED.**

Whitney A. Estwick, Council Bluffs, attorney for appellant mother.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General.

Roberta Megel, Council Bluffs, attorney and guardian ad litem for minor child.

Considered by Mullins, P.J., and May and Ahlers, JJ.

**AHLERS, Judge.**

The parental rights of the parents of L.B., a five-year-old child, were terminated by the juvenile court. The mother appeals. The father does not.

**I.     Factual and Procedural Background**

The family came to the attention of the Iowa Department of Human Services (DHS) in 2019 following a domestic violence episode witnessed by the children in the household.[1]  The episode included the mother punching the father[2] several times, the father grabbing the mother by the throat, and the father trying to push the mother over a porch railing.  Once the DHS became involved, additional problems were discovered.  Those additional problems included substance abuse by the mother and father, employment instability, housing instability, and failure to keep L.B. on track developmentally.  L.B. was adjudicated to be a child in need of assistance (CINA).  Despite the problems, L.B. was left in the mother's custody. The mother was ordered to participate in family safety, risk, and permanency services; complete a domestic violence victim's program; submit to random drug testing, obtain a substance-abuse evaluation; complete a parenting class; maintain employment; maintain a suitable residence; and follow any active no-contact orders.

Following CINA adjudication and disposition, the mother was largely noncompliant with the juvenile court's orders.  She failed to enroll in a domestic violence victim's program, obtain a substance-abuse evaluation, submit to drug

---

[1] L.B. has an older half-sibling, J.H.  L.B. and J.H. have the same mother.  They resided together with their mother when the DHS first became involved with the family.

[2] The father referred to throughout this opinion is the father of L.B.

testing, obtain employment, obtain housing, or ensure L.B. was getting proper dental care and education evaluations. Things came to a head in July 2020, around ten months following CINA disposition, when it was discovered that both parents were using methamphetamine and were living together despite assurances they had not been. As a result, L.B. and J.H. were removed from the mother's custody, with L.B. placed in DHS custody for placement in foster care and J.H. placed in J.H.'s father's custody.

After removal and placement in foster care, L.B.'s development and dental care markedly improved, while the mother continued to struggle. She refused to attend a family team meeting or go to drug treatment. She also remained unemployed and became homeless. After finally submitting to a substance-abuse evaluation that recommended inpatient treatment, she entered treatment but was quickly discharged from the facility due to continued drug use. When service providers arranged for admission to a different facility, she failed to show up. She continued to refuse to submit to drug testing, commenting she knew she would test positive.

As a result of this series of events, the State initiated termination-of-parental-rights proceedings. Following a hearing, the juvenile court terminated the mother's rights under Iowa Code section 232.116(1)(e) and (*l*) (2021). The mother appeals.

II. **Standard of Review**

On appeal from an order terminating parental rights, our standard of review is de novo. *In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021). On de novo review,

we give respectful consideration to the juvenile court's factual findings, particularly with respect to credibility determinations, but we are not bound by them. *Id.*

## III. Discussion

The mother raises three issues: (1) reasonable efforts for reunification were not provided to her; (2) the State failed to prove statutory grounds for termination; and (3) the closeness of the bond between L.B. and the mother should preclude termination under Iowa Code section 232.116(3)(c). We address these issues in turn.

### A. Reasonable Efforts

We reject the mother's reasonable-efforts claim due to waiver. "The [DHS] has an obligation to make reasonable efforts toward reunification, but a parent has an equal obligation to demand other, different, or additional services prior to a permanency or termination hearing." *In re A.A.G.*, 708 N.W.2d 85, 91 (Iowa Ct. App. 2005). Our supreme court explained the parent's obligation as follows:

> If a parent has a complaint regarding services, the parent must make such challenge at the removal, when the case permanency plan is entered, or at later review hearings. Moreover, voicing complaints regarding the adequacy of services to a social worker is not sufficient. A parent must inform the juvenile court of such challenge.

*In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2002) (internal citations omitted). After a review of the record, we find no challenge made by the mother to the juvenile court before the termination hearing voicing complaints about the adequacy of the services offered to the mother. In fact, we see no challenge to the reasonableness of the reunification efforts during the termination hearing, but, even if such challenge was made at the hearing, it was too late. *See id.* ("[I]f a parent fails to request other services at the proper time, the parent waives the issue and may not

later challenge it at the termination proceeding."). We find the mother waived any reasonable-efforts challenge to the termination of her rights.

### B.     Statutory Grounds

As noted, the juvenile court terminated the mother's parental rights based on two statutory grounds. When a juvenile court terminates parental rights on more than one statutory ground, we affirm if we find even one ground for termination satisfied. *In re T.S.*, No. 14-1517, 2015 WL 791698, at *7 (Iowa Ct. App. Feb. 25, 2015). In that case, "we may affirm the juvenile court's order on any ground we find supported by the record." *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). Here, we choose to rely on section 232.116(1)(*l*), which permits termination of parental rights upon proof of these elements:

> (1) The child has been adjudicated a child in need of assistance pursuant to section 232.96 and custody has been transferred from the child's parents for placement pursuant to section 232.102.
> (2) The parent has a severe substance-related disorder and presents a danger to self or others as evidenced by prior acts.
> (3) There is clear and convincing evidence that the parent's prognosis indicates that the child will not be able to be returned to the custody of the parent within a reasonable period of time considering the child's age and need for a permanent home.

There is no dispute the State proved the first element. The mother challenges the proof establishing the second and third elements, contending "the State offered no evidence she had a substance abuse disorder and her prognosis was poor."

The second element requires proof the mother has "a severe substance-related disorder," which the Iowa Code defines "as 'a diagnosable substance abuse disorder of sufficient duration to meet diagnostic criteria specified within the most current diagnostic and statistical manual of mental disorders published by the

America psychiatric association that results in functional impairment.'" *In re L.H.*, 949 N.W.2d 268, 271 (Iowa Ct. App. 2020) (citing Iowa Code §§ 125.2(15), 232.116(1)(*l*)(2)). Contrary to the mother's contention, the State offered clear and convincing proof the mother had a severe substance-related disorder. Exhibits offered at the hearing show that, after the mother underwent a substance-abuse evaluation, she was diagnosed with F11.20 opioid use disorder, severe. This diagnosis, coupled with her history of illegal drug usage, provides clear and convincing evidence that the mother has a severe substance-related disorder within the meaning of Iowa Code section 232.116(1)(*l*)(2). *See L.H.*, 949 N.W.2d at 271 (finding diagnosis of "F15.20 amphetamine type substance disorder, severe and F10.10 alcohol use disorder, mild" to be sufficient evidence to show a "severe substance-related disorder").

As for the second element's requirement that the State prove the mother's severe substance-related disorder presents a danger to the mother or others as evidenced by prior acts, we find the State met its burden on this point as well. The record reveals that, five days before the termination hearing, the mother overdosed on heroin and required emergency medical treatment. This event qualifies as clear and convincing proof that the mother's severe substance-related disorder presents a danger to herself.

As for the third element, we disagree with the mother's contention that the State offered no proof that her prognosis was poor. By the time of the termination hearing, L.B. had been removed from the mother's care for nine months. During that period, the mother continued to use illegal drugs repeatedly, dragged her feet in getting a substance-abuse evaluation, was unsuccessfully discharged from

treatment, refused to enter another treatment facility after arrangements were made for her to do so, and refused to submit to drug testing while admitting she would test positive.  As noted, she also overdosed on heroin five days before the termination hearing.  Further, at the beginning of the termination hearing, the mother was in a treatment facility that she had entered just three days before the hearing.[3]  However, even though the hearing only lasted one hour and nineteen minutes, during the hearing, the mother left the room where she had access to the videoconference, packed her belongings, and left the treatment facility.  Based on this evidence, we have no hesitation in finding the State presented clear and convincing evidence that the mother's prognosis indicates that L.B. will not be able to be returned to her custody within a reasonable period of time considering L.B.'s age and need for a permanent home, thus satisfying the third element of section 232.116(1)(*l*).

Based on our de novo review, we agree with the juvenile court that the State presented clear and convincing evidence establishing statutory grounds for termination of the mother's parental rights under section 232.116(1)(*l*).

## C.    Permissive Exception

Once statutory grounds for termination have been established and termination is found to be in the children's best interests, we must then consider whether there are any exceptions set forth in section 232.116(3) that should be applied to preclude termination.  *See In re D.W.*, 791 N.W.2d 703, 709 (Iowa 2010).

---

[3] Due to the COVID-19 pandemic, the termination hearing was conducted by videoconference pursuant to the supreme court supervisory orders permitting video hearings during the pandemic.  The mother was participating in the videoconference from the treatment facility when the termination hearing started.

The exceptions to termination set forth in section 232.116(3) are permissive, not mandatory, so we are not required to apply them even if they have been established. *In re A.S.*, 906 N.W.2d 467, 475 (Iowa 2018). The parent resisting termination bears the burden of proof to establish an exception under section 232.116(3). *Id.* at 476.

Here, the mother relies on the permissive exception in section 232.116(3)(c), which permits courts to refuse to terminate parental rights if "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." She notes the child was in her care until removal nine months before the termination hearing, she attended the majority of the visits offered, L.B. gets excited to see the mother on visits, and the mother loves the child. She contends these facts trigger application of section 232.116(3)(c) to preclude termination. We disagree.

We begin by noting that "love is not enough to trigger this exception." *In re A.M.*, 20-0480, 2020 WL 4814170, at *4 (Iowa Ct. App. Aug. 19, 2020) (citing *D.W.*, 791 N.W.2d at 709). The relevant consideration when assessing this exception is not the parent's love for the child, but whether the child will be disadvantaged by termination. *Id.* As noted, the child was developmentally behind and suffered from various dental problems due to parental neglect when the child was removed. After removal, the child quickly gained ground in her development and was able to have her longstanding dental problems corrected. Given the mother's unmitigated substance-abuse problems and track record of instability in housing and employment, we are not convinced the child will be disadvantaged by termination. To the contrary, all signs point to the child being better off by terminating the

mother's parental rights and freeing the child for adoption, irrespective of the mother's professed love for the child and the child's excitement at seeing the mother at past visits. In short, the mother failed to meet her burden to establish the child will be disadvantaged by termination.

**IV.     Conclusion**

The mother waived any challenge to termination of her rights based on lack of reasonable efforts being made for reunification. The State met its burden of establishing statutory grounds for termination under section 232.116(1)(*l*). The closeness of the mother-child relationship does not warrant application of the permissive exception under section 232.116(3)(c). As a result, we affirm.

**AFFIRMED.**