**IN THE COURT OF APPEALS OF IOWA**

No. 24-1409
Filed November 13, 2024

**IN THE INTEREST OF C.K. and C.K.,**
**Minor Children,**

**A.G., Mother,**
　　Appellant,

**C.K., Father,**
　　Appellant.

_____

　　Appeal from the Iowa District Court for Pottawattamie County, Charles D. Fagan, Judge.

　　A mother and father separately appeal from the termination of their parental rights to their children. **AFFIRMED ON BOTH APPEALS.**

　　Mandy L. Whiddon of Whiddon Law, Omaha, Nebraska, for appellant mother.

　　Eric A. Checketts of Checketts Law, PLC, Glenwood, for appellant father.

　　Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, for appellee State.

　　Abby Lynn Davison of the Office of The State Public Defender, Council Bluffs, attorney and guardian ad litem for minor children.

　　Considered by Schumacher, P.J., and Badding and Chicchelly, JJ.

**SCHUMACHER, Presiding Judge.**

A mother and father separately appeal the termination of their parental rights to their children, born in 2020 and 2022. Both contend the State failed to prove the grounds for termination cited by the district court, termination is not in the children's best interests based on the bonds they share with the children, and the State did not engage in reasonable efforts to reunite them with the children. The father also requests additional time to work toward reunification. Upon our review, we affirm both appeals.

## I.      Background Facts and Proceedings

This family came to the attention of the Iowa Department of Health and Human Services (HHS) in February 2023, upon concerns the mother was not providing adequate care or supervision for the children. The mother had untreated mental-health issues and slept excessively. She changed the older child's diaper only when the child requested. Her home had dog feces littering the floor. The younger child was admitted to a hospital in respiratory distress and had sores on her body due to inadequate hygiene and skin breakdown.[1] The father lived in Ames and was not able to provide care for the children. The children were removed from the mother's custody (first the younger child, followed shortly thereafter by the older child) and adjudicated in need of assistance. By April, the children were placed together with licensed foster parents, where they have remained.

---

[1] A founded child abuse assessment was issued naming the mother responsible for denial of critical care stemming from her failure to provide appropriate care for the younger child, who was then nine months old.

Because of lack of meaningful progress by either parent after more than one year, the State initiated termination-of-parental-rights proceedings in June 2024. The termination hearing took place in August. The parents had not progressed beyond fully supervised visits. The father testified it was a "struggle" to travel for visits, but he "cherish[ed]" his time with the children. In recent months, the parents were late to visits or missed them entirely and made only a few phone calls to check on the children. The older child, who at times became "upset" and exhibited "negative behaviors" after visits, had stopped asking about the parents. The younger child, who was fed through a G-Tube and received oxygenation, was described as "medically fragile" and required constant care and attention. The foster parents were asked to work with the parents on video calls to teach them about the child's complex medical needs. The foster parents "were very willing to provide this extra help to both parents," but the parents had utilized this opportunity only a few times. During the younger child's recent two-week hospitalization for pneumonia, the mother slept in a room at the hospital provided for parents but did not care for or interact with the child. Rather, she reported she was homeless and had nowhere else to stay.

Both parents acknowledged struggles with their mental health. They obtained mental-health evaluations but failed to follow through with services on a consistent basis. Neither was employed. The father was staying with his ex-wife and his three older children, but he admitted he was not allowed to be unsupervised with those children. He believed he would be employed soon, and he planned to rent a six-bedroom house that would be suitable for him to live with the mother and the children. He acknowledged "it's taken this long" to be in a

position to parent due to circumstances that were "out of [his] control," but he believed the children could now be returned to his custody. The mother also requested that the children be returned to her custody. In the alternative, the parents asked for additional time to work toward reunification. The guardian ad litem and HHS recommended termination of parental rights.

The court entered an order terminating parental rights under Iowa Code section 232.116(1)(d), (e) and (f) (2024) as to the older child and section 232.116(1)(d), (e), and (h) as to the younger child. The mother and father separately appeal.

## II.     Standard of Review

We review termination-of-parental-rights proceedings de novo. *In re A.B.*, 957 N.W.2d 280, 293 (Iowa 2021). Upon review, our primary consideration is the best interests of the children, *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006), the defining elements of which are the children's safety and need for a permanent home, *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011).

## III.     Analysis

In our review, we use a three-step analysis: first, determine whether a ground for termination exists under Iowa Code section 232.116 paragraph (1); next, apply the best-interest framework from paragraph (2); and last, consider if any exceptions from paragraph (3) apply to preclude termination. *See In re A.S.*, 906 N.W.2d 467, 472–73 (Iowa 2018).

### A.     Grounds for Termination

Both parents challenge the sufficiency of the evidence supporting the grounds for termination cited by the district court. We may affirm if we find clear

and convincing evidence to support any of the statutory provisions. *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We focus on Iowa Code section 232.116(1)(f) and (h), which require proof of several elements conceded by the parents and proof the children could not be returned to their custody. *See* Iowa Code § 232.116(f)(4), (h)(4). The father claims "within a reasonable period of time, had the opportunity been given, [he] would have been able to receive placement of the child[ren]." Similarly, the mother claims "the children could be returned to her care immediately or shortly upon demonstrating continued improvement in medical and parenting skills."

Given the children's young ages and the younger child's serious medical needs, we find the State proved neither parent could assume custody at the time of the termination hearing without a risk of harm to the children. The visitation supervisor reported the mother was hesitant to provide care for the younger child during visits. The HHS caseworker described the younger child as requiring around-the-clock care:

> In the moment that she starts to have medical breathing issues, unable to swallow correctly, that is an immediate emergency now. She is still sleeping in the same bedroom as the foster parents for that very reason. I feel it would be unsafe for [C.K.] to be in a home where she may not have those needs met immediately. That is a life-or-death situation, and we are talking minutes.

The caseworker further reported the parents had not done enough to learn about the children's needs to instill confidence they could meet the younger child's health challenges without ongoing supervision. As the district court found:

> Both parents say that the children can be returned to their care but neither have shown any movement on dealing with the basic issues that brought them before this court. The parents have not shown that they can consistently care for themselves. [The father]

testified that he felt like he is under a microscope. The reality is that [the parents] have to be under that microscope because [the younger child] and to a lesser degree [the older child]'s life depends on it. The children love their parents and visits, when they happen, are joyful but even then the inability to follow instruction on caring for the children stands out. [The father] testified that [the mother] tried to assist with [the younger child]'s care but did not want to overstep her bounds. The foster family gave both parents the opportunity to come on [sic] appear by zoom and learn how to care for these children, both parents did not take advantage of this opportunity. [The father] admits that he is not up to date on the current care required for [the younger child]. [The mother] has never been up to date. DHHS and others report that they repeatedly have to prompt the parents as to issues of care.

Since the children's removal, the parents have only had the children in a supervised setting and they have not taken steps to advance to more independent contact. On this record, we agree with the court that the children remain at risk of harm if returned to either parent's custody. Clear and convincing evidence supports termination under paragraph (f) and paragraph (h).

### B.    Best Interests

When determining best interests, we give primary weight to "the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental and emotional condition[s] and needs of the child[ren]." Iowa Code § 232.116(2). Here, these factors all weigh in favor of termination.

Both parents claim termination is not in the children's "best interests"—the mother by pointing to her bond with the children and the father pointing to his bond with the children and by requesting additional time. When considering whether termination is in a child's best interests, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and

growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). Neither parent addresses how these factors weigh against termination.

"Consideration of the parent-child bond is not a part of our best-interests analysis." *In re E.S.*, No. 23-0590, 2023 WL 4104126, at *2 (Iowa Ct. App. June 21, 2023). But section 232.116(3)(c) allows the court to forgo termination when "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." We believe both the parents and children enjoy the time they share. Yet under this record, neither parent has established termination of their parental rights will be detrimental to the children. We conclude termination of both parents' rights is in the best interest of the children.[2]

### C. Extension of Time for Reunification Efforts

In passing, the father claims "there was abundant reason to grant [him] additional time and opportunities to achieve reunification with his child[ren]." To grant an extension of time for reunification, the court must "enumerate the specific factors, conditions, or expected behavioral changes" providing a basis to determine the child will be able to return to the parent at the end of the additional six months. Iowa Code § 232.104(2)(b). To the contrary, the court found:

> The same problems that precipitated the children's removal from their parent's care—untreated mental health problems, lack of

---

[2] The father makes a passing reference to Iowa Code section 232.116(3) in the best interest section of his petition on appeal but does not indicate which exception he is asserting. We do not address a permissive exception in this opinion, finding the father has waived any argument relating to a permissive exception by failing to develop an argument beyond such passing reference. *See In re A.H.*, No. 23-1412, 2023 WL 7015742, (Iowa Ct. App. Oct. 25, 2023).

appropriate housing and employment, minimal compliance and lack of verification or commitment—exist after over 17 months of services. The parents have shown that they are not prepared to care for these children. There is no evidence that giving them additional time to address their problems would be fruitful in the near future. There is no bond between these children and their parents that would warrant the court allowing for more time to reunify.

On this record, the court had no basis to grant an extension and we, like the district court, decline to grant the father additional time for reunification efforts.

### D. Reasonable Efforts

Both parents argue that HHS failed to make reasonable efforts to reunite them with the children. *See In re C.H.*, 652 N.W.2d 144, 147 (Iowa 2002) ("The State must make reasonable efforts to provide services to a parent before termination proceedings may be instituted."). The father claims HHS "did not work with [him] at maximizing contact between him and the children." Similarly, the mother claims HHS "did not provide enough visitation for the children."

As to both parents, we find the issue not preserved for our review. Neither parent moved for additional services they believe would have changed the course of this case. *See In re C.B.*, 611 N.W.2d 489, 493–94 (Iowa 2000) ("We have repeatedly emphasized the importance for a parent to object to services early in the process so appropriate changes can be made."). Although the mother states she requested additional visitation, even despite having transportation arranged for her through the father, we observe she missed a number of in-person visits. She also failed to take advantage of extra phone or video visits that were offered. The father testified he requested visitation be moved, but he "understood" when it was scheduled "halfway." He also acknowledged he was provided gas cards.

Under these circumstances, we would not set aside the termination even if the issue had been properly and promptly drawn to the district court's attention.

We affirm the termination of both parents' rights.

**AFFIRMED ON BOTH APPEALS.**