# IN THE COURT OF APPEALS OF IOWA

No. 24-2085
Filed March 19, 2025

**IN THE INTEREST OF R.S.,**
**Minor Child,**

**A.S., Mother,**
        **Appellant.**

_____

Appeal from the Iowa District Court for Black Hawk County, Michelle Jungers, Judge.

A mother appeals the termination of her parental rights to her child. **AFFIRMED.**

Joseph G. Martin, Cedar Falls, for appellant mother.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, for appellee State.

Rachel Christine Bailie Antonuccio of Juvenile Public Defenders Office Waterloo, Waterloo, attorney and guardian ad litem for minor child.

Considered by Tabor, P.J., and Schumacher and Chicchelly, JJ.

**CHICCHELLY, Judge.**

A mother appeals the termination of her parental rights to her child, R.S., contending that a six-month extension should have been granted.[1]  Upon our review, we affirm.

## I.    *Background Facts and Proceedings.*

This family has a long history with the Iowa Department of Health and Human Services ("the department").  Even before this case, the mother had five founded child-abuse assessments.  Her parental rights to two of her five children had been previously terminated, and two of her other children had been placed in guardianships with paternal relatives.  This appeal concerns the mother's fifth child, R.S., born in 2023.

In late 2023, when R.S. was just over one month old, the mother was arrested after driving drunk with R.S. not properly secured in the backseat.  The State charged the mother with operating while intoxicated and child endangerment, and a no contact order was entered listing R.S. as the protected party.  When the department spoke to the mother in jail, she refused to cooperate with them or disclose the location of the child.  R.S. was eventually discovered at a family friend's home.  When the mother was released from jail, she contacted the family friend, falsely claiming the no contact order had been dropped and requesting R.S. be returned to her care.  After the mother "threatened to run away with the child," the juvenile court removed R.S. and placed him with the family friend as a

---

[1] The juvenile court also terminated the putative father's parental rights to R.S. Because he does not appeal, we do not address him further.

fictive-kin placement. The mother eventually pled guilty, and the no contact order was modified to allow the department to facilitate visitation.

Throughout these proceedings and the mother's previous involvement with the department, the mother was "verbally abusive and aggressive." She called the department staff "bitches" and threatened violence against them. Every attempt by providers to redirect the mother's unsafe parenting was met with hostility. The department had to provide two people to supervise the mother during visits due to her behaviors. And these visits were not always consistent, with the mother attending only twenty-eight out of forty-four visits offered. When she did attend visits, the mother often arrived late, left early, or was otherwise disengaged from the child, sometimes refusing to feed R.S. or take him out of his car seat while she scrolled on her phone. The mother told the department's caseworker that "the placement holds him too much" and R.S. is "too heavy" to explain why she did not hold him. The caseworker testified that the providers resorted to hiding R.S.'s car seat during visits to force the mother to engage with him. And even when the visits were transferred to the mother's apartment, she did not provide age-appropriate toys or activities. Instead, she watched television while R.S. "tr[ied] to play with the outlet" until providers intervened.

Another conflict between the mother, the department, and R.S.'s placement concerned the child's medical care. The mother interfered with the placement's access to R.S.'s medical care, canceling or rescheduling appointments without informing her. The mother also refused routine vaccinations for R.S. The department caseworker testified that the doctor later wrote her a letter, concluding the mother's decision to refuse "vaccinations was vindictive and not based in

religion and/or safety concerns." At one of R.S.'s medical appointments, the mother "became aggressive" and "got in [the placement's] face." The mother was then only permitted to attend these appointments by phone.

The mother also failed to address the department's primary concern, which was the substance use that initially led to her criminal charges. While she completed both substance-use and mental-health evaluations, she was not honest with the evaluators about her drinking or trauma. As a result, neither recommended any treatment based on the mother's self-reports. And when the mother agreed to see a therapist, she only attended a couple appointments before she no-showed again. As for her substance use, despite the juvenile court excusing a number of her drug tests,[2] the mother continued to either test positive for alcohol or refuse to test at all. She similarly declined to participate in any substance-use treatment.

A termination hearing occurred in October 2024, after which the juvenile court terminated the mother's parental rights to R.S. The mother appeals.

## II. Review.

We review termination-of-parental-rights proceedings de novo. *See In re W.T.*, 967 N.W.2d 315, 322 (Iowa 2021). "We are not bound by the factual findings of the juvenile court, but we give them weight, particularly regarding credibility determinations." *Id.*

---

[2] The juvenile court found the drug tests conducted on Sundays should be excused because the mother was unable to find public transportation to the drug-testing facility on Sundays.

### III.    Discussion.

The mother does not challenge the grounds for termination of her parental rights to her child; we therefore "limit our review to the specific claim[] presented."[3] *In re K.W.*, No. 23-1884, 2024 WL 1757377, at *2 (Iowa Ct. App. Apr. 24, 2024). The mother only contends that a six-month extension should have been granted in lieu of termination.  *See* Iowa Code § 232.104(2)(b) (permitting the juvenile court to delay permanency if "the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period").  But we do not grant such extensions without justification.  *See id.* (requiring the court to "enumerate the specific factors, conditions, or expected behavioral changes" to justify additional time); *accord In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) ("We do not gamble with the child['s] future by asking them to continuously wait for a stable biological parent." (cleaned up)).  To be granted additional time, the mother must

---

[3] But the mother does loosely argue that termination was not in the best interests of the child and that the department failed to conduct adequate visitation.  We find the first argument is waived for lack of argument and decline to proceed to its merits.  *See In re K.C.-P.*, No. 23-1730, 2024 WL 260829, at *1 (Iowa Ct. App. Jan. 24, 2024) (finding a parent's "bare-bones best-interests argument" "is not enough to facilitate our review").  As to the mother's concerns about visitation, we interpret this as a reasonable-efforts challenge.  *See* Iowa Code § 232.102(4)(b) (2024) (requiring that the department "make every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interests of the child"); *In re R.D.*, No. 22-1966, 2023 WL 2672051, at *6 (Iowa Ct. App. Mar. 29, 2023) (including "visitation designed to facilitate reunification" as part of its reasonable-efforts finding (citation omitted)).  But this argument was raised for the first time at the termination hearing, which is too late for our review.  *See In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2002) ("[I]f a parent fails to request other services at the proper time, the parent waives the issue and may not later challenge it at the termination proceeding.").  We therefore need not reach the merits of the mother's reasonable-efforts claim.  *See id.*

"show the impediments to placing [the child] with [her] will not exist in six months."
*W.T.*, 967 N.W.2d at 323.

Upon our de novo review, we do not find that the mother met this burden. The mother has made almost no progress during the course of these proceedings, which does not convince us that she would be able to care for R.S. after the six additional months have elapsed. *See In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000) (considering "the parent's past performance" to indicate "the quality of the future care that parent is capable of providing"). "Time is a critical element" in termination proceedings, especially after the statutory grounds for termination have been established. *Id.* ("A parent cannot wait until the eve of termination, after the statutory time periods for reunification have expired, to begin to express an interest in parenting."). The mother has not demonstrated an ability to maintain sobriety and care for R.S. She also has not historically taken advantage of the litany of services offered to her by the department nor addressed any of its concerns. We therefore have limited confidence that this will change in the short timeframe afforded to us under section 232.104(2)(b). Meanwhile, R.S. has become "very bonded" to his placement and has thrived in their care. *See D.W.*, 791 N.W.2d at 708 (finding the child's bond and integration with placement family favors terminating the mother's parental rights). We decline to "deprive [R.S.] of permanency . . . by hoping someday [his] parent will learn to be a parent and be able to provide a stable home." *In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014). Instead, we affirm the termination of the mother's parental rights to R.S.

*IV.*     ***Disposition.***

Because we find that a six-month extension is not warranted, we affirm termination of the mother's parental rights.

**AFFIRMED.**