## IN THE COURT OF APPEALS OF IOWA

No. 25-1414
Filed November 13, 2025

IN THE INTEREST OF M.R., J.R., and S.R.,
Minor Children,

Z.R., Father,
　　　Appellant,

B.T., Mother,
　　　Appellant.
_____

Appeal from the Iowa District Court for Emmet County, Ann M. Gales, Judge.

A mother and father separately appeal the juvenile court's order terminating their parental rights to three children. **AFFIRMED ON BOTH APPEALS.**

Michael H. Johnson, Spirit Lake, for appellant father.

Tyler J. Alger, Spirit Lake, for appellant mother.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, for appellee State.

Edward James Rosendahl of Forsyth Law Office, Estherville, attorney and guardian ad litem for minor children.

Considered without oral argument by Greer, P.J., and Schumacher and Ahlers, JJ.

**AHLERS, Judge.**

The juvenile court terminated the parental rights of both parents of children born in 2017, 2018, and 2020. Both parents separately appeal.

We start with some background. The juvenile court adjudicated the children in need of assistance (CINA) in 2021 due to unsafe housing conditions and verbal and physical domestic altercations between the parents in the children's presence. A few months later, the Iowa Department of Human Services[1] completed a founded child abuse report finding that the father had physically abused the two oldest children, causing injuries. Both the father and mother have continued to deny responsibility for the abuse inflicted on the children.

The court placed custody of the children with the mother under the supervision of the department via a safety plan. In 2022, it was discovered that the mother had violated the safety plan by allowing the father to live with her and the children. The children were removed from both parents' custody and placed in the custody of a relative. Over a year later, custody of the children was returned to the mother. Unbeknownst to the department, the mother was pregnant with a fourth child. The mother delivered the child without the department's knowledge and then fled the state of Iowa to prevent the removal of the newborn from her custody. In doing so, the mother left the three children at issue here behind in the father's care in violation of the safety plan and the court's custody order. The father ended up leaving the children with the relatives who previously had custody, and

---

[1] In 2022, the Iowa Department of Human Services merged with the Iowa Department of Public Health to form the Iowa Department of Health and Human Services.

then he moved to Oklahoma, where the mother also eventually moved with the newborn.

The juvenile court removed the three children from the parents' custody again. The parents have not returned to Iowa to care for the children, so these termination-of-parental-rights proceedings were eventually filed. Following a trial, the court terminated both parents' rights to the children. The parents separately appeal.

## I. Standard and Process of Review

Our review in termination-of-parental-rights cases is de novo. *In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022). We follow a three-step process of determining (1) whether the State has established a statutory ground for termination under Iowa Code section 232.116(1) (2025); (2) whether the State has established that termination of parental rights is in the children's best interests after applying the framework in section 232.116(2); and (3) whether a permissive exception under section 232.116(3) should be applied. *In re L.A.*, 20 N.W.3d 529, 532 (Iowa Ct. App. 2025) (en banc). We do not address any steps not challenged by a parent. *Id.* After addressing any challenged steps, we then address any additional claims raised by a parent. *Id.*

## II. Father's Appeal

We interpret the father's petition on appeal as raising three issues: (1) the State failed to prove statutory grounds supporting termination, in part because the department failed to make reasonable efforts to facilitate reunification; (2) the closeness of the father's relationship with the children warranted application of a

permissive exception to termination; and (3) the father should have been given additional time to work toward reunification.[2]  We address each in turn.

### A.        Statutory Grounds

The juvenile court terminated the father's parental rights under Iowa Code section 232.116(1)(b), (e), and (f).  When the juvenile court terminates on multiple grounds, we can affirm based on any ground supported by the record.  *Id.*  We focus on subparagraph (f).  Section 232.116(1)(f) permits termination of parental rights upon clear and convincing proof that (1) the children are four years old or older; (2) the children have been adjudicated CINA; (3) the children have been removed from the parent's physical custody for at least twelve of the preceding eighteen months; and (4) the children cannot be returned to the parent's custody at the time of the termination trial.[3]

The father contests only the fourth element.  But he makes no argument that the children could be returned to his custody at the time of the termination trial.

---

[2] It is not entirely clear what issues the father raises in his petition.  Not all issue subheadings correlate with main headings, and the bodies of various sections make passing reference to issues not mentioned in the headings or subheadings.  We have done our best to determine the issues the father seeks to raise and conclude that these four issues are the issues raised.  If the father is attempting to raise other issues, we deem the issues forfeited for failing to clearly identify, develop, or cite authority in support of them.  *See State v. Jackson*, 4 N.W.3d 298, 311 (Iowa 2024) (finding forfeiture of an issue on appeal when a party fails to clearly identify it, make more than a perfunctory argument in support of it, or cite authority in support of it).

[3] Section 232.116(1)(f)(4) refers to not being able to return a child to the parent's custody "at the present time," which our appellate courts interpret to mean at the time of the termination trial.  *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting "at the present time" in section 232.116(1)(h)(4) to mean at the time of the termination trial); *see also In re P.C.P.*, No. 22-1960, 2023 WL 2671858, at *2 (Iowa Ct. App. Mar. 29, 2023) (citing *In re D.W.* in concluding that "[a]t the present time" as used in section 232.116(1)(f)(4) means the same as in section 232.116(1)(h)(4), which means at the time of the termination trial).

Instead, he contends they could have been returned to the mother's custody within the next six months. This argument does not advance the father's cause for two reasons. First, even if it were true that the children could be returned to the mother—and it's not—the question of whether the children could be returned to the mother's custody is immaterial to whether the father's rights can be terminated. *See In re J.P.*, No. 19-1633, 2020 WL 110425, at *3 n.4 (Iowa Ct. App. Jan. 9, 2020) (recognizing a parent does not have standing to advocate for the return of custody to the other parent). The father makes no argument as to how the children could be returned to his custody. Second, contending that the children could be returned to either parent's custody within the next six months does not support the father's challenge to the fourth element, as the relevant time in determining whether section 232.116(1)(f)(4) has been established is the time of the termination trial.

The father contends that imminent reunification was not possible because the department failed to make reasonable efforts to facilitate reunification, citing deficiencies in visitation. While not a strict substantive requirement for termination, "[t]he State must show reasonable efforts [toward reunification] as part of its ultimate proof that the child[ren] cannot be safely returned to the [custody] of a parent," implicating section 232.116(1)(f)(4). *See In re L.T.*, 924 N.W.2d 521, 527 (Iowa 2019) (first alteration in original). However, we do not address the merits of the father's claim because he waived the issue by not raising it to the juvenile court prior to the termination trial. *In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2002) (requiring a parent challenging the adequacy of services raise the challenge to the juvenile court "at the removal, when the case permanency plan is entered, or at

later review hearings"). As the father failed to raise this challenge to the juvenile court at the appropriate time, he "waive[d] the issue and may not later challenge it at the termination proceeding." *Id.*

Accordingly, we reject the father's challenge to the services provided and find a statutory ground for termination satisfied under section 232.116(1)(f).

**B.    Permissive Exception**

Iowa Code section 232.116(3) provides a list of scenarios that, if found to apply, give the juvenile court discretion to not terminate a parent's rights even if statutory grounds for doing so exist. *In re A.S.*, 906 N.W.2d 467, 475 (Iowa 2018). A parent resisting termination has the burden of proving that an exception applies, and, even if the parent meets that burden, applying the exception is permissive, not mandatory. *Id.* at 475–76.

The father relies on the exception found in section 232.116(3)(c) and contends the juvenile court erred in failing to apply it. That section allows the court to forego terminating the father's rights as to each child if "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." Iowa Code § 232.116(3)(c).

Following our de novo review, we agree with these findings by the juvenile court in rejecting the father's claim:

> [The children] express affection for [the father] during their interactions with him, though these occur less frequently [than with the mother]. . . .
>     . . . [N]either parent produced evidence to support a finding that his or her bond with the children is "so significant that severing it would be manifestly detrimental" to the children. *See In re C.S.*, [No. 23-2011,] 2024 WL 707010, at *4 [(Iowa Ct. App. Feb. 21,

2024)]. The evidence does not establish a parent/child bond so significant as to "justify maintaining the legal ties between [the children] and [their] parents." *Id.*

In applying the exception in section 232.116(3)(c), the "consideration must center on whether the child will be disadvantaged by termination, and whether the disadvantage overcomes [the parent's] inability to provide for [the child's] needs." *See D.W.*, 791 N.W.2d at 709. The court concludes that the children have an urgent and extreme need for permanency after almost three years out of their parents' care. Their need for permanency overrides any harm they will experience as a result of the relationship with their parents being severed.

(Alterations seven through ten in original.) The father has failed to meet his burden to establish applicability of section 232.116(3)(c), so we reject this challenge to the juvenile court's termination order.

## C. Additional Time

The father also contends he should have been given additional time to work toward reunification. This is an option that was available to the juvenile court. *See* Iowa Code § 232.117(5) (permitting the court to enter a permanency order under section 232.104 if it decides not to terminate parental rights); *see also id.* § 232.104(2)(b) (providing a permanency option of giving a parent an additional six months to work toward reunification). However, to apply the option, the court has to be able to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." *Id.* § 232.104(2)(b).

In rejecting the father's request for additional time, the juvenile court highlighted the fact that the parents had already been given two, six-month extensions. The court went on to say:

The parents argue that a third extension of the permanency timeline should be granted. To continue placement for six more months, however, the court must determine that the continued need for removal will no longer exist at the end of the six-month extension period. . . . It is not realistic, under present circumstances, to expect that the need for removal of the children will no longer exist at the end of an additional six-month period. At the time of the termination hearing, neither parent had physically visited the children in Iowa for more than six months [and] neither of them had any intention of returning to Iowa . . . .

The record in this case "does not reveal any articulable facts that support granting [the parents] an additional six months." *See In re A.L.*, [No. 22-0442], 2022 WL 1658699, at *[3] (Iowa Ct. App. [May 25,] 2022). Instead, there is a high likelihood the parents would repeat their previous patterns of behavior and we would be in the same situation at the end of the extension period. Under the circumstances, a third extension of the reunification period is unwarranted and would not be in the children's best interests.

(Second alteration in original.) Following our de novo review, we agree with this assessment by the juvenile court. Based on that assessment, we agree with the juvenile court's decision to not give the father a third six-month extension.

## III.   Mother's Appeal

The mother raises a single issue on appeal. She contends the juvenile court erred by concluding that terminating her parental rights to the children is in their best interests. When making a best-interests determination, we "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." Iowa Code § 232.116(2).

On this issue, the juvenile court gave this well-reasoned analysis:

The children's CINA cases had been pending for nearly four years at the time of the termination hearing. The children were removed from [the mother]'s custody twice. The second removal occurred only two months and eight days after the children had been returned to her care. At the time of the hearing, the children had been removed from parental custody for thirty-two of the previous thirty-five months.

The parents were granted two six-month extensions of the permanency timeline during the course of the CINA case. They have been given nearly three times as much time as prescribed by the legislature to demonstrate their ability to safely parent the children. At the time of the termination hearing, both parents were residing in another state and neither had seen [the children] in person during the previous seven months.

As the guardian ad litem stated in his closing remarks, we are long past the point where the children need permanency in this case. Their "physical, mental, and emotional condition and needs" are being addressed by capable, loving caregivers on a daily basis. *See* Iowa Code § 232.116(2). They are in a safe and stable placement that allows them to maintain connections with their relatives and former caregivers . . . . The court does not know whether [the foster parents] will adopt the children. But the court realizes that reunification with the parents will not be possible in this case and the children need a stable, permanent placement, a placement that will further their "long-term nurturing and growth." The court concludes that the factors in section 232.116(2) support termination of parental rights as being in the children's short-term and long-term best interests.

The court has considered the fact that termination of [the parents'] parental rights will result in the children and [their infant half-sibling] being raised in different homes by different caregivers. However, the fact is that the children have never met or interacted with their [infant half-sibling] in person. Termination of parental rights does not foreclose a future relationship between the children and [their infant half-sibling], depending on future circumstances outside the court's control. Because the children do not have an existing relationship with [their infant half-sibling], the court need not and will not enter an order for ongoing contact between the children and [their infant half-sibling]. *See* Iowa Code § 232[.]117(4).

This sums up the best-interests-of-the-children analysis accurately, and no worthwhile purpose would be served by us repeating the same analysis and conclusion using different words. Suffice it to say that, following our de novo review, we agree with the juvenile court's analysis on this issue. As this is the only issue the mother raises, we accordingly reject her challenge to the juvenile court's decision to terminate her parental rights.

**IV.    Conclusion**

Having rejected both the father and mother's challenges to the juvenile court's termination order, we affirm on both appeals.

**AFFIRMED ON BOTH APPEALS.**